JOSEPH FEUDTNER

*v.*

ROBERT ROSS, executor, &c.

[Decided February 11th, 1908.]

1. A unilateral contract contained in a lease, and purporting to bind the lessor, will be upheld; the rent reserved in the lease being a sufficient consideration for the contract.

2. A purchaser of a mortgage during foreclosure bought the premises at the foreclosure sale, and leased them to the mortgagor, and agreed that, if the mortgagor purchased them on or before a designated date, the purchase price would be a specified amount. The mortgagor accepted after the designated date leases in which no reference was made to his right to purchase.—*Held,* that the agreement gave to the mortgagor a mere option to purchase before the designated date.

Heard on bill, answer, replication and proofs in open court.

*Mr. James J. Furey* and *Mr. Gilbert Collins,* for the complainant.

*Messrs. McDermott & Fisk,* for the defendant.

GARRISON, V. C.

The immediate object of the bill in this suit was to obtain an injunction to prevent the defendant from dispossessing the complainant from a piece of land in Jersey City. The ultimate and important object of the bill was to secure title and possession in the complainant of the land in question.

The bill was framed upon the theory that a trust existed between Mathews in his lifetime (the defendant being his executor) and Feudtner, and the complainant prayed that (by means which need not be recited) this trust should be so carried out and enforced that title would be vested in him.

There was an utter failure of proof of any trust, and the case was actually tried and argued upon another theory, namely, that

there existed between Mathews in his lifetime and Feudtner an agreement by which Mathews agreed to convey the property to Feudtner for $1,150.

I shall decide the case with respect to this theory.

The proofs show that Jacob Feudtner owned the land in question prior to the 1st day of February, 1901. There was a mortgage upon the property for $675 held by people named Neilson. This mortgage was being foreclosed prior to the date mentioned. During the process of foreclosure Frank J. Mathews bought the mortgage from the Neilsons. Frank J. Mathews and Feudtner had some sort of an understanding or had had some talk concerning the property prior to the decree of foreclosure. There is no evidence as to what this talk was, or what arrangement, if any, was made between them. The property was sold about February 1st, 1901, under the decree of foreclosure and was bought in by Mathews for less than the amount of his decree. After the sale in foreclosure, and in the early part of March, 1901, Mathews came to the premises and saw Feudtner in the presence of Feudtner's son. Mathews had with him a piece of paper upon which was written various items concerning this property, namely, the amount of the foreclosure decree, the costs and sheriff's fees, the back taxes and other like items, showing an aggregate of $1,137. At this interview Mathews, giving this paper to Feudtner, told him that he, Mathews, had bought the property in at sheriff's sale, that Feudtner should not worry, that he might at any time he wanted buy it back at the same price that Mathews paid for it providing he paid Mathews interest on that amount.

Subsequently the parties entered into a lease for the premises in question, dated March 22d, 1901, providing for a term running from the 1st of February, 1901, Feudtner having been in possession all the time, and that date being the date of the sheriff's sale. This lease provided for an annual rental of $100, payable in quarterly installments of $25 each. On the back of this lease, in Mathews' handwriting, there was written as follows: "March 22d, 1901, purchase price $1,150 if purchased before August 1st, 1901. F. J. M."

There was no proof of any other lease during Mathews' lifetime. Mathews died on the 22d of August, 1902. After Mat-

hews' death the Frank J. Mathews Company managed this property as the agent of Robert S. Ross, the executor of Mathews, and there were four leases executed between Ross and Feudtner. These leases were, respectively, for the years 1903-1904, 1904-1905, 1905-1906 and 1906-1907, the last one terminating on the 1st day of May, 1907. No one of these leases, either in its body or by endorsement, contains any reference whatever to the matter of purchase. The rent reserved in each lease, excepting the last one, was the same as stated above. In the last lease the rent was increased to $120 a year, payable in quarterly installments of $30 each. It was not until this raise in rent was made that Feudtner seems ever to have communicated to Ross or to anyone in his behalf that he, Feudtner, claimed to have any contract to purchase the property.

Before the signing of this last lease Feudtner did go to the office of the Mathews company and state that he had a contract with Mathews, but he did not produce whatever it was that he claimed to have.

Later than this he informed Mr. Ross personally that he claimed to have such a contract, but as Ross knew nothing about the matter he referred him to the agent of the Mathews company which had managed the property, and there the matter ended.

After the termination of the last lease the defendant started dispossess proceedings against the complainant, and it is those proceedings which the complainant seeks to enjoin by this bill.

The contention of the complainant now is that the facts show a contract made by Mathews in his lifetime with Feudtner by which it was agreed that Feudtner might purchase the property for $1,150, and that time is not of the essence of this contract, and, therefore, it should be enforced now.

The complainant, of course, concedes that if there was any contract it was unilateral, and he endeavors to bring himself within those cases, not necessary to be cited, which have held that a unilateral contract contained in a lease will be upheld because the rent reserved will be held to be sufficient consideration for the contract. This principle is firmly established, and, if it applied, would undoubtedly result favorably to the complainant.

But I do not find that the facts bring the complainant within the principle contended for.

I think it clear that all that can be said to be proven in this case in favor of the complainant is that Mathews, by a writing (which, if it satisfies the statute of frauds,) agreed with him that if he purchased the property on or before August 1st, 1901, the purchase price would be $1,150.

It may be conceded, without being decided that it is the law, that if Feudtner, on or before August 1st, 1901, had tendered to Mathews the $1,150, he could have required Mathews to convey the property, contending that this endorsement on the back of the lease should be read with the lease, and the rent reserved would be sufficient consideration, and his rights, therefore, would be enforced in accordance with the principle of law contended for.

But I do not think that the facts proven in this case amount to any more than an option given by Mathews in favor of Feudtner, by which the latter, if he exercised the option before the date fixed, might obtain the property at the price named. This gives full weight, I think, to all of the proofs adduced in favor of the complainant. It also gives effect to the written papers which must control in this matter, and is consistent with the conduct of the parties. To now hold that Feudtner may exercise this right, after the acceptance by him of the four subsequent leases, in which no reference whatever is made to the matter of purchase, and to so extend the language of the endorsement on the first lease as to hold it an unlimited agreement to sell, would, in my view, be a most dangerous and unwarranted extension of the principles which control the subject of agreements with respect to real estate.

Under these circumstances I am constrained to deny the relief prayed for, and to advise a decree in favor of the defendant.