JOHN E. SEMMES ET AL., THE BOARD OF SCHOOL COMMISSIONERS OF BALTIMORE CITY *vs.* ETHEL ROWLAND.

*Board of School Commissioners of Baltimore City Not Authorized to Appoint Probationary Teacher Subject to Dismissal.*

The Board of School Commissioners of Baltimore City has the power under Local Code, Art. 4, sec. 99, to subject a candi-

date for the position of teacher in the public schools to the test of actual work in teaching in order to ascertain his aptness to teach, as a part of the examination of such candidate. But the Board is not authorized to appoint a candidate as a probationary teacher for one year, making the appointment subject to cancellation during that year. The Board can only appoint regular teachers upon the nomination of the Superintendent of Instruction after an examination as to the fitness of the candidate.

Local Code of Baltimore City, sec. 99, provides that the Board of School Commissioners shall confirm or reject all nominations of teachers in the public schools made to it from graded lists by the Superintendent and his assistants, and that any teacher may be removed by said Board on the recommendation of the Superintendent after charges preferred and trial had. A resolution adopted by the School Board directed that no candidate should be appointed a regular teacher whose aptness to teach had not first been tested by the Superintendent during a probationary period of twelve months prior to such appointment. The petitioner in this case was appointed by the Board a teacher in the schools under the condition that her aptness to teach be made manifest by her work during twelve months, and that if, during that period, her work should be deemed unsatisfactory by the Superintendent, the appointment should be subject to cancellation, on ten days' notice. This appointment was made without a nomination to the Board by the Superintendent. Before the end of the twelve months' period, the petitioner was notified by the Board that the Superintendent had reported her work as teacher to be unsatisfactory, and that her appointment was cancelled. She then filed the petition in this case alleging that she had been removed as teacher without charges having been preferred against her and a trial had; that the Board had no power to make a conditional appointment of her as a probationary teacher, and that since the condition was void, she was a regular teacher and could be removed only in the manner prescribed by statute. *Held,* that the appointment of the petitioner was void, not only for the want of a preced-

ing nomination, but becaues of the condition contained in the appointment, it not being within the power of the Board to make such conditional appointment, and that since the appointment was void, the petitioner never became a teacher within the meaning of the statute, and that consequently she was not entitled to have charges preferred against her and a trial had before the Board could refuse to permit her to teach in the schools.

*Decided January 10th, 1911.*

Appeal from the Baltimore City Court (ELLIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, THOMAS, PATTISON and URNER, JJ.

*Sylvan Hayes Lauchheimer* and *German H. H. Emory* (with whom was *Edgar Allan Poe* on the brief), for the appellants.

*David Ash* and *Charles Jackson*, for the appellee.

PATTISON, J., delivered the opinion of the Court.

In January, 1909, Miss Ethel Rowland, the appellee, who will hereafter be referred to as the relator, received from the Secretary of the Board of School Commissioners of Baltimore, the appellants, who will hereafter be called the respondents, the following letter:

"BALTIMORE, January 13, 1909.

*"To Miss Ethel Rowland:*

"You are hereby notified that by action of the Board of School Commissioners of Baltimore, dated as above, you have been appointed as a teacher in the Public Schools of Baltimore

City, to take effect upon your signing the prescribed letter of acceptance.    But this appointment is upon the proviso that your aptness to teach shall be made manifest by your actual work as a teacher, to be tested by inspection by the Superintendent of Instruction from time to time during the twelve months following your election, and that if at any time during such twelve months your work or conduct as a teacher shall be deemed unsatisfactory by the Superintendent, this appointment may be cancelled by the Board on ten days' notice to you.

"RETAIN THIS"

"This appointment is subject, also, to the provisions of the Act of the General Assembly of Maryland, known as the 'Teachers' Retirement Act,' passed at the Session of 1908.

"Yours respectfully,

"JOHN H. ROCHE,

"Secretary of the Board of School Commissioners."

With the above was enclosed a letter addressed to the respondents, to be signed and returned by the relator to them, should she accept the appointment, under the terms and conditions contained in the letter to her.   She accepted the appointment and signed and returned the letter, which is as follows:

"BALTIMORE, January 15, 1909.

*"To the Board of School Commissioners,*

*Baltimore—*

"RETURN THIS"

"I hereby accept the appointment as teacher in the Public Schools made by you in accordance with the terms of your letter of appointment, including compliance with the provisions of the Act of the General Assembly of Maryland, known as the 'Teachers' Retirement Act,' passed at the Session of 1908.

"ETHEL ROWLAND."

Thereafter she was assigned to teach at one of the public schools of the City, known as School No. 63, and while so

teaching she received the following letter from the Secretary of the Respondents:

"BALTIMORE, December 23, 1909.

*"Miss Ethel Rowland,*

*City.*

"DEAR MISS ROWLAND:

"I am instructed by the Board of School Commissioners to notify you, which I now do, that your appointment, of date January 13, 1909, is hereby cancelled, to take effect from ten days from date, as per contract signed by you under date of January 15, 1909, your work being reported as unsatisfactory by the Superintendent of Public Instruction.

"Yours very respectfully,

"JOHN H. ROCHE,

"Secretary."

After the expiration of the time mentioned in this last letter to her, the relator was not permitted, by the respondents, to teach. Whereupon, on the 18th day of January, 1910, she filed her petition in the Baltimore City Court, asking that a writ of mandamus be issued against the respondents requiring them to reinstate her as a teacher and that she be assigned by them to teach at one of the public schools of the City.

In her petition she alleges the facts above stated and further alleged that she was dismissed or removed as a teacher without charges being preferred against her and without trial thereon; that she was ready and willing to teach but was not permitted to do so by the respondents, and that in consequence thereof she has suffered and continues to suffer irreparable damages.

The respondents filed their answer in which they admit the appointment of the relator upon the terms and conditions disclosed by the correspondence above given, and likewise admit the cancellation of the appointment as stated and their refusal to permit her to teach after the time named in the cancellation notice dated December 23rd, 1909. They also

admit that no opportunity was given to her to be heard upon any charge preferred against her, and allege that it was not incumbent upon them to do so; that by the terms and conditions of the appointment, to which she had agreed, they had the absolute right to cancel it when and as it was done. In the answer they allege that "James H. Van Sickle, Superintendent of Instruction, having tested the work and conduct of the petitioner as a teacher, by inspection thereof from time to time since her appointment, made the following report to the Board of School Commissioners:

" 'December 22, 1909.
" 'To the Board of School Commissioners:
        Gentlemen—
" 'We have to report that Miss Ethel Rowland, now completing her year of probationary teaching, has in spite of an unusually large amount of supervisory assistance, made so little progress and shown such a lack of promise toward ever becoming a good teacher, that, in our judgment, she should not be retained in the service after the expiration of the trial year.
" 'Under the terms of the contract, signed by the teacher, she is entitled to ten days' notice. We respectfully suggest that if you care to *follow the precedent of certain high-school cases,* you might let the teacher sign a contract for a second trial year.
                    " 'JAMES H. VAN SICKLE,·
        " 'Superintendent of Instruction.' "

The answer further alleges that at a meeting of the respondents on the 22nd day of December, 1909, the following action, among other things, was taken:
"Ten Days' Notice:—On report of the Superintendent, it was ordered that a certain teacher now completing her year as probationary teacher, be given ten days' notice of cancellation of appointment, she being reported unsatisfactory."

The answer then alleges that the teacher referred to was the petitioner and that it was in pursuance of this order that

the cancellation notice of December 23, 1909, was sent to the relator by the Secretary of the respondents.

To the answer the relator filed her demurrer, which was sustained by the Court. The respondents, upon leave being granted them, filed their amended answer, in which after adopting the original answer in full, alleged that by section 101 of the City Code it is made the duty of the Superintendent and his assistants to ascertain the training, knowledge, *aptness for teaching* and character of every candidate for the place of teacher and to report to the respondents graded lists of those whom they deem qualified for appointment, from which graded lists all nominations for teachers shall be made by the Superintendent and his assistants to the respondents, and that by section 99 of the said Code it is provided that the respondents shall confirm or reject all nominations of teachers thus made to them by the Superintendent and his assistants. That it was found by the respondents and the Superintendent and his assistants to be impossible to ascertain the aptness of the candidate for teaching by written examinations alone, but that this could only be surely ascertained by an inspection of the actual work of such candidates as teachers. Therefore it was resolved by the School Board in April, 1907:

"That no candidate should be appointed a regular teacher in the public schools of Baltimore City whose aptness to teach had not first been tested by the Superintendent during a probationary period of twelve months prior to such appointment." The answer then alleges that "since that time no candidate is, or has been, nominated to the School Board by the Superintendent or his assistants, for appointment as regular teacher, whose aptness to teach had not first been made manifest by actual work as a teacher during said probationary period;" that all candidates before entering upon their said probationary period are notified as the relator was in this case, the forms for notification and acceptance being the

same, and that it was pursuant to this rule adopted as afore-said that the relator was appointed probationary teacher, subject to the terms and conditions given, which terms and conditions were accepted by her.

The answer further alleges that she was never recommended to the School Board by the Superintendent or his assistants, for appointment as a regular teacher in the public schools of Baltimore City and was never so appointed.

To this amended answer the relator also filed her demurrer and this too was sustained. Whereupon the respondents declined to answer, and an order was accordingly passed granting the writ of mandamus asked for by the relator. It is from this order sustaining the demurrer to the respondents' amended answer and granting the writ of mandamus as prayed, that this appeal is taken.

It will thus be seen from what has been said that the relator was removed from her position by reason of her alleged failure to meet the requirements and conditions imposed upon her at the time of her appointment. It is of this removal that the relator complains, contending that she, under the provisions of the Code, notwithstanding her consent to the conditions imposed at the time of appointment, could not have been removed as teacher without charges being preferred against her and trial had thereon; and further contending that while the appointment was valid, the conditions imposed were void.

Section 99 of the City Code provides: "The members of the said Board (referring to the Board of School Commissioners) shall be chosen by the Mayor from among those he deems most capable of promoting the interest of public education by reason of their intelligence, character, education or business habits. * * * The said Board shall confirm or reject all nominations of teachers made to it, as hereinafter provided by the Superintendent of Public Instruction and his assistants. It shall not confirm the appointment of any

teacher whose name does not appear upon the graded list, hereinafter provided for. All officers, secretaries, clerks and employees shall be appointed by said Board, and may be removed by it at pleasure, and any teacher may be removed by said Board on the recommendation of the Superintendent of Public Instruction after charges preferred and trial had." Section 101 provides: "It shall be the duty of the Superintendent of Public Instruction and his Assistants, as examiners, to ascertain, by appropriate committees, appointed as hereinbefore provided, the training, knowledge, *aptness for teaching* and character of every future candidate for the place of a teacher, and to report to the Board of School Commissioners graded lists of those whom they deem qualified for appointment, from which graded lists all nominations of teachers shall be made by the Superintendent of Public Instruction and his Assistants to the Board of School Commissioners. All such nominations of teachers shall be made in the order in which the names of the nominees appear upon such graded lists. In the preparation of these graded lists the superintendent of Public Instruction and his Assistants shall ascertain by competitive examination the relative qualifications of those candidates who desire appointment, and shall place the names of the accepted candidates upon said graded lists in the order of their relative qualifications, so ascertained by such competitive examination."

It will be seen from the above provisions of the City Code, that there are two requirements that must be observed before a person can, by appointment, become a teacher in the public schools of Baltimore City. There must, first, be a nomination by the Superintendent of Public Instruction and his Assistants to the Board of School Commissioners made in conformity with the requirements of the provisions of the City Code; and, second, a confirmation by the Board of School Commissioners of the nomination so made to them by the Superintendent and his Assistants, followed by an ap-

pointment of the nominee. The teacher, when so appointed, holds for no fixed or definite period of time, but is subject to removal by the Board of School Commissioners upon the recommendation of the Superintendent of Public Instruction after charges preferred and trial had.

The relator does not allege in her petition that she was nominated by the Superintendent of Public Instruction and his Assistants to the Board of School Commissioners, and that she, upon such nomination, was by the Board of School Commissioners appointed a teacher in the public schools of Baltimore City, but contents herself by alleging simply that "having been elected by the said defendants (the School Commissioners) as a public school teacher" she qualified as such and was assigned to teach at one of the public schools of the City.

The respondents, in their answer, meet this allegation by alleging "that the petitioner never was recommended to the School Board by the Superintendent of Public Instruction and his Assistants for appointment as a regular teacher in the public schools of Baltimore City, and never was appointed as a regular teacher" in the City schools. In explanation of what is meant by the term *"regular teacher,"* the respondents, in their answer, allege that they, the respondents, and the Superintendent and his Assistants "found through experience that it was impossible for the said Superintendent to ascertain the *aptness for teaching* of candidates for the place of teacher by written examinations alone, but this could only be truly and surely ascertained by an inspection, during some probationary period of actual work of such candidates as teachers." Accordingly, the resolution of April, 1907, hereinbefore given in full, was passed, and thereafter no candidates were appointed as regular teacher in the schools of the City whose aptness to teach had not first been tested by the Superintendent during a probationary period of twelve months prior to such appointment. This test became a fixed, permanent test, which was applied to all can-

didates and to which all candidates were required to conform, before any one of them could be nominated by the Superintendent to the School Board for appointment as regular teacher.

From this explanation it appears that the term *"regular teacher"* is used in contradistinction to that of *"probationary teacher,"* which latter class of teachers, it seems, is but an outgrowth of the method or practice adopted by the respondents and the Superintendent of Public Instruction and his Assistants for the purpose, as they allege, of ascertaining the *aptness for teaching* of the candidate seeking appointment. Therefore, the allegation in the answer that the relator was never nominated by the Superintendent of Public Instruction to the Board of School Commissioners, has application to the former class of teachers, and as this allegation is admitted by the demurrer to be true, it will be so considered by us. If, therefore, the power of the School Board is confined to the appointment of what is known by them as "regular teachers," then the answer is sufficient and complete and the demurrer thereto was improperly sustained by the learned Court below.

It thus becomes necessary for us to inquire as to the validity of the appointment of the relator as a probationary teacher under the terms and conditions imposed upon her in the correspondence hereinbefore fully set out. We recognize and appreciate the force of what is said by the respondents in relation to the necessity of subjecting the candidates to a test of actual teaching before they can pass upon and determine such candidate's aptness for teaching. It would, indeed, be difficult, if not impossible, by a written examination alone, to determine whether or not the candidate possessed this important qualification. It would seem absolutely necessary that the candidate should be subjected to the test of actual work as a teacher in order to determine fully whether or not such candidate has this qualification. As the provisions of the Code require that this qualificaton, as well as others, shall be ascertianed before the nomination is made, we think it permissible, under the Code, to subject the candi-

date to such test as part of the examination that the candidate is required to undergo, but we do not think it necessary that an appointment such as was made in this case should be made in order to subject the candidate to such test.

In the letter to her the relator was informed of her appointment in these words: "You have been appointed a teacher in the public schools of Baltimore City, to take effect upon your signing the prescribed letter of acceptance," which letter of acceptance was signed and forwarded to the School Commissioners. This appointment, made without nomination, took effect upon her signing the letter of acceptance and was to continue in full force and effect for an indefinite period (subject to removal as provided by the Code), should her work and conduct as a teacher in the twelve months following be deemed satisfactory to the Superintendent, and should she manifest an aptness for teaching within that time. It was not necessary, by the terms of her employment, that she, at the expiration of the probationary period, if she manifested an aptness for teaching and proved satisfactory to the Superintendent, should be again appointed, but she would thereafter continue to teach as a teacher in the schools of the City under the original appointment, and therefore by such appointment she would become a regular teacher in the public schools of the City without being first nominated and appointed in the manner prescribed by the Code.

The Superintendent of Instruction, in his report upon the work and teaching of the relator, made by letter of December 22nd, says: "We respectfully suggest that if you care to follow the precedent of certain high-school cases, you might let the teacher sign a contract for a second trial year." Thus indicating the extent to which this method of appointing teachers could be and had been carried, without the right on their part of having charges preferred against them and an opportunity to be heard upon such charges before removal. Any method of appointing teachers that would admit of such extensions by which the teacher would be deprived of the

above mentioned rights, given to him or her under the Code, would not only be an evasion of the law, but would also be in violation of both the spirit and meaning of the statute.

It is contended by the relator that the conditions contained in the appointment are void, because of the alleged want of power in the Commissioners, under the Code, to make a conditional appointment and that their power to appoint is limited to unconditional appointments. They contend that with the conditions void, the appointment then stands as an unconditional appointment within the meaning of the statute. If this be true, the appointment is then void as an unconditional appointment, because there was no nomination first made, as required by the Code. The Commissioners in the exercise of the power of appointing teachers, so conferred upon them by the statute, are required to comply with its substantial provisions, otherwise the appointment is void. "The power and duty of selecting and appointing a school teacher are usually regulated by statute, and in order that the selection or appointment may be valid, there must be a compliance with all the substantial requirements of the statute relative to the mode of making such selections or appointments, and if the provision is mandatory it must be strictly pursued." 35 *Cyc.* 1074.

We cannot adopt the contention of the relator that the appointment is valid and the conditions void. In our opinion the appointment of the relator was void, not only for the want of a preceding nomination, but because of the conditions contained in the appointment, it not being within the power of the School Commissioners, under the existing provisions of the Code, to make such conditional appointment; and the appointment being void, the relator never became a teacher in the public schools of the City within the meaning of the City Code. Consequently, the School Commissioners were not required to prefer charges against her and give her an opportunity to be heard thereon before refusing to permit her to teach longer in the public schools of the City.

From what we have said it follows that the lower Court erred in sustaining the demurrer to the respondents' answer and granting the writ of mandamus. We will therefore reverse the order of the Court and dismiss the petition.

> *Order reversed and petition dismissed, with costs to the appellants.*