# SOPHIE C. WATERS

## *vs.*

# CHARLES T. WAMBACH.

*Option in Lease—Duration—Sale of Reversion.*

On an issue as to the validity of a lease, *held* that the lessor was the real owner of the property, though the title was nominally in his son and partner.                                        p. 255

One purchasing property with knowledge that plaintiff was in possession of the property was charged with notice as to plaintiff's rights and interests under a lease thereof to him.                                                      p. 256

Where a lease for six months, with a privilege of renewal for another six months, provided that all its provisions and covenants should "continue in force from term to term after the expiration of the term" first mentioned, but either of the parties should have the right to terminate the lease at the end of any term by giving thirty days' notice, and that the lessee should have an option to purchase the property "within the term" of the lease, *held* that the lessee had the right to exercise such option until the lease was brought to an end by the method prescribed.                                        pp. 256, 257

*Decided January 13th, 1922.*

Appeal from the Circuit Court of Baltimore City (STUMP, J.).

Bill by Charles T. Wambach against Sophie C. Waters for specific performance of a covenant in a lease. From a decree for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., URNER, ADKINS, and OFFUTT, JJ.

*Addison E. Mulliken,* with whom were *Theodore C. Waters* and *Mulliken & Porter* on the brief, for the appellant.

*John B. Gontrum,* for the appellee.

URNER, J., delivered the opinion of the Court.

On April 22nd, 1915, Theodore Cooke leased to the appellee a house and lot on 31st Street in Baltimore for the term of six months, beginning on May 1st, 1915, at a rental of twenty-seven dollars per month, with the privilege of renewal for another term of six months. It was further agreed in the lease that "all its provisions and covenants shall continue in force from term to term after the expiration of the term" first mentioned, but either of the parties should have the right to terminate the lease at the end of any term by giving to the other party at least thirty days' previous notice in writing, and that the lessee should have the option to purchase the leased property at the price of $2,600 subject to an annual ground rent of $75, and in case he should desire to buy the property "within the term" of the lease, he should "be allowed the rent paid in, less the ground rent, water rent, taxes, insurance and interest at the rate of six per cent on the purchase price." The lease was signed and sealed for the lessor by his authorized agent. At the time of its execution the title to the property was held by H. Webster Cooke, the lessor's son, who was his partner in the real estate business.

After the death of Theodore Cooke in January, 1918, the monthly rent accruing under the lease was paid to his estate while it was in course of administration. In February, 1919, the property referred to was conveyed to his daughter, Sophie C. Waters, by the son who held the title. Mrs. Waters has since received the rent. Just prior to the conveyance to her, the administrators of Theodore Cooke's estate, of whom she was one, had given notice to the lessee that the existing lease would not be renewed after the expiration of the current term on April 30th, 1919, and thereafter the rent would be in-

creased to thirty-two dollars per month. In April, 1919, the lessee gave notice to Mrs. Waters of his purpose to exercise the option of purchase which the lease conferred. His right to avail himself of the option was denied and the pending suit for specific performance resulted. The appeal is from a decree requiring the conveyance of the property to the lessee for the price and upon the terms stated in the lease.

The grounds of defense mentioned in the answer are that the lease and the option it contained were not authorized by the holder of the record title, that the defendant acquired the title without knowledge of the option, and that the plaintiff's right to exercise it has been lost by delay.

The evidence in the case points to the conclusion that Theodore Cooke was the real owner of the demised property, while the title was nominally held by his son and partner. It is proven that the property was entirely under the father's control and that the rent was received by him exclusively. There is testimony to the effect that he represented himself to be the owner, and that, a few months before his death, he urged the plaintiff to make the purchase since attempted. The son, who was the only witness for the defendant, and who does not say that he paid for the property, testified that it was conveyed to him pursuant to an agreement with his father "in the nature of a partnership in the development of real estate," and that the conveyance to his sister, the defendant, after his father's death, was in consideration of love and affection and in order "to avoid any friction in the family." The fact that the property belonged to the father was practically conceded by the son in his acceptance, as one of the administrators, of the rent which the plaintiff regularly paid to them in that capacity.

In the answer first filed by the defendant, it was admitted that she acquired the leased premises in the division of the estate of her deceased father. An amended answer withdrew that admission. But the evidence justifies the belief that the statement in the first answer is in accord with the real purpose of the conveyance. While this particular property was

not inventoried as a part of Theodore Cooke's estate, doubt-
less because the record title was in his son's name, yet his
virtual ownership of it was recognized by all parties con-
cerned.   Under the conditions proven, the defendant is not
entitled to reject the provisions of the lease to which the
property was subject when she obtained her title and the
benefits of which she has since accepted. If she was not then
actually aware of the option of purchase held by the plaintiff
under the lease, it does not appear from any evidence in the
case that she was without such information.   At all events,
she had knowledge of the plaintiff's possession, and as she
could readily inform herself as to his rights and interests, it
is proper that she should be chargeable with notice of their
nature and extent.   *Engler* v. *Garrett,* 100 Md. 396; 16
R. C. L. 538.

The option was exercised within a period of time during
which the lease made it available.   It was one of the pro-
visions which were to "continue in force from term to term
after the expiration of the term" which the lease first created.
The case is very similar to that of *Thomas* v. *The G. B. S.
Brewing Co.,* 102 Md. 421.   There the orginal term of the
lease was one year, and it was provided that the lease, "with
all its provisions and covenants," should "continue in force
from term to term," with the right reserved to either party
to terminate it by giving thirty days' notice in writing prior
to the end of any annual period.   The tenant, by the next
clause, was given the option to purchase the property "at the
end of said term" for the sum of $2,000. The question was
whether the option could be exercised only at the end of the
first year of the tenancy.   It was held that the right was not
thus restricted.   This Court, through CHIEF JUDGE Mc-
SHERRY, said: "The parties themselves have in the contract
itself defined the meaning of the phrase *"at the end of said
term,"* for they have declared that the agreement with *all* its
provisions and covenants, and therefore with the provision
giving the option of purchase, shall continue in force from
*term to term* after the expiration of the first year, though

to each of the parties the right was reserved to terminate the lease at the end of the first term, or of *any* term thereafter. It is obvious, then, that the parties to the agreement defined each year to be a term within and subject to every provision and covenant applicable to the first year; and hence it must follow that if the option of purchase was a provision or covenant which could have been exercised during the first year, it continued in force during every succeeding year or *term* until the lease was brought to an end by the method therein prescribed. The right of the tenant to purchase the property is, as was stated by this Court in *Maughlin* v. *Perry & Warren,* 35 Md. 357, 'a continual obligation running with the lease on the part of the lessor, with the option in the tenant to accept the same or not within that time.' " There can be no doubt, therefore, in the present case that the option was exercised in due time under the terms of the lease from which we have quoted.

The principle of estoppel was invoked by the defendant as against the plaintiff's right of purchase, but we have not found any conditions here which would make that doctrine applicable. There was nothing in the plaintiff's conduct to induce the defendant, or those to whose rights she succeeded, to believe that he would not avail himself of the option, and he does not appear to have had any reason to suppose that they were not fully informed as to the terms of the agreement under which he was in possession.

*Decree affirmed, with costs.*