MEADOW HEIGHTS COUNTRY CLUB *v.* HINCKLEY.

1. LANDLORD AND TENANT—OPTION TO RENEW—TERMINATION OF LEASE.

   A lease for the term of ten years with the privilege of renewal for five additional years, *held*, a present demise for the period of 15 years at the option of the lessee.[1]

2. SAME—OPTION TO PURCHASE DURING TERM REMAINS IN FORCE UNTIL TERMINATION OF RENEWAL PERIOD.

   The right to purchase leased premises "immediately upon the termination of the lease or during the last three months thereof," contained in a lease for ten years with the option of a renewal for five additional years, *held*, to be in force until the termination of the renewal period, since the lease constituted the option to purchase a covenant running with the demise of the land.[2]

3. SAME—LEASE WITH OPTION TO PURCHASE NOT SEPARATE AGREEMENTS.

   Lessors' contention that the lease and the option to purchase are separate and distinct agreements, and that the renewal clause applies only to the lease and not to the option to purchase, cannot be sustained, since the contract was made as a whole and must be considered as such.[3]

Appeal from Jackson; Williams (Benjamin), J. Submitted October 10, 1924. (Docket No. 67.) Decided December 10, 1924.

Bill by the Meadow Heights Country Club against Frederick P. Hinckley and others for specific performance of a contract in a lease. From a decree for plaintiff, defendants appeal. Affirmed.

[1]Landlord and Tenant, 35 C. J. § 160; [2]Id., 35 C. J. § 188; [3]Id., 35 C. J. § 160.

On effect of holding over after expiration of lease with option for extension or renewal, without formally exercising option, see notes in 29 L. R. A. (N. S.) 174; L. R. A. 1916E, 1232.

*Cobb, Bisbee & Wilson,* for plaintiff.

*Lucking, Helfman, Lucking & Hanlon* (*Cleveland G. Parshall*, of counsel), for defendants.

WIEST, J.   In this case we determine whether the following option to purchase expired at the end of 10 years, or remained until the expiration of the full holding under the lease.   The lease was made February 25, 1905:

"For the term of ten years from and after the 24th day of February A. D. 1905, with the privilege of a renewal for five additional years, on the same terms.   *   *   *

"First parties do hereby bargain and sell unto second party the exclusive right and option to purchase the premises hereinbefore described, at a price not to exceed one hundred twenty-five dollars ($125.00) per acre, provided, however, that said right must be exercised immediately upon the termination of the lease or during the last three months thereof and that second party shall give to the first party at least thirty (30) days' notice in writing of such intention to purchase."

The right to the renewal was exercised, and notice of election to purchase was given during the renewal period.   Defendants, claiming the option did not extend beyond the 10-year period, refused to perform by deed, and plaintiff filed the bill herein to have specific performance decreed.   In the circuit decree passed for plaintiff, and the case is here on appeal by defendants.

The parties agreed that the option to purchase might be exercised at any time before the termination of the lease.   When did this lease terminate?   The lease was a present demise for the period of 15 years at the option of plaintiff.   *Delashman* v. *Berry*, 20 Mich. 292 (4 Am. Rep. 392); *Flynn* v. *Bachner*, 168 Mich. 424 (Ann. Cas. 1913C, 641).   The lease itself extended the term.   *Luthey* v. *Joyce*, 132 Minn. 451

(157 N. W. 708, L. R. A. 1916E, 1235); *Bergstein* v. *Bergquist*, 152 Minn. 358 (189 N. W. 120). The parties contracted for a 15-year holding by plaintiff, if plaintiff so desired, and certainly there could be no termination of the lease until the right to hold thereunder ended. The lease expressed no new purpose and carried no limitations during the extended period. The lease constituted the option to purchase a covenant running with the demise of the land.

Defendants contend the lease and the option to purchase are as separate and distinct as though in separate instruments, and neither depends for validity upon the other. Upon this premise they say the renewal clause applies only to the lease and not to the option to purchase. This ignores the option to purchase as a substantial part of the contract and was well answered by the court of appeals of Maryland in *Stansbury* v. *Fringer*, 11 Gill & J. 149:

"Where a contract consists of several distinct and separate stipulations on one side, and a legal consideration is stated on the other, it must be considered that the entire contract was in the contemplation of the parties in each particular stipulation; and formed one of the inducements therefor, and no one stipulation can be supposed to result from, or compensate for the consideration, or any portion of it, exclusive of other stipulations, unless the parties have expressly so declared; and this will be the case, whether the consideration be a sum of money to be paid in gross, or a specific act to be performed, or several payments in money, or several acts to be performed. It is impossible to say in this case, from the face of the contract, that the appellee would have agreed either to occupy the land, or to pay the taxes or to erect a house, except for this very privilege of purchasing the title, which he now seeks to enforce."

The option to purchase was not an agreement apart from the lease itself. We do not agree with counsel that such a provision is unusual in leases. The parties made the option to purchase an integral part of the

lease, and we are not inclined to dismember their contract. The contract was made as a whole, and must be considered as such.

An option accorded a lessee to purchase premises during the term is not an agreement foreign to a lease, but quite intimately connected with the contract, for it permits the tenant to make improvements of a permanent nature without endangering loss thereof at the expiration of the lease. This was true in the case at bar, for the plaintiff wanted the use of the premises in connection with its clubhouse and its adjoining holdings and rented and improved the premises, knowing it had the right to purchase at the agreed price at the close of its tenancy.

"It is common for leases to contain a provision conferring an option upon the tenant to purchase the demised premises." 35 C. J. p. 1038, § 181.

"An option to purchase, being an integral part of a lease, is a substantial part of the whole contract." 35 C. J. p. 1038, § 182.

The circumstances under which the lease was made clearly establish that the option to purchase was not an agreement independent of the lease. See *Wright* v. *Kaynor*, 150 Mich. 7.

"Whether the option to purchase contained in a lease is an independent agreement, or, in connection with the lease, forms one entire agreement, depends upon the intention of the parties, and this is to be resolved by the construction of the instrument read in the light of its circumstances." *Thompson* v. *Coe*, 96 Conn. 644 (115 Atl. 219, 17 A. L. R. 1233).

The case at bar is not like *Mathews Slate Co.* v. *New Empire Slate Co.*, 122 Fed. 972, cited by defendants as authority for dividing the covenants of the leases into independent parts. There the option to purchase in no wise depended upon performance of the lease, and the court could not say it was a part of

the consideration for the lease.    Here the option to purchase was a moving cause for the lease and had to be exercised while the lease was in force.    Counsel speak of a renewal as something distinct from a continuation.    Modern authority spends no time splitting hairs over the technical meaning of the word "renewal" as employed in such a lease as this.    *Orr* v. *Doubleday, Page & Co.,* 223 N. Y. 334 (119 N. E. 552, 1 A. L. R. 338).    The right to remain beyond 10 years was in the lease, and no renewal was contemplated or required for the demise for the five years was *in praesenti* to take effect *in futuro* at the option of the lessee.    The lease and the option to purchase were inseparably connected.    When the lease terminated the option terminated; but until the lease terminated the option was open to acceptance.

Counsel for defendants call our attention to *Parker* v. *Lewis,* 267 Pa. 382 (110 Atl. 79), and *Signor* v. *Keystone Consistory A. A. S. R.,* 277 Pa. 504 (121 Atl. 320).    In the *Parker Case* the lease was for eight years, with option to purchase limited to five years. The option to purchase was not exercised within five years, and the court held the option dead and not revived by subsequent renewals of the lease.    In the *Signor Case* the option ended at a fixed date and it was held a renewal of the lease did not carry the option beyond such fixed date.    The same is to be said of *Feudtner* v. *Ross,* 74 N. J. Eq. 214 (69 Atl. 190). The cases just mentioned have no application to the question at bar.    This option ran until termination of the lease and this included the period of extension. *Waters* v. *Wambach,* 140 Md. 253 (117 Atl. 751); *Thomas* v. *Brewing Co.,* 102 Md. 417 (62 Atl. 633); *Maughlin* v. *Perry,* 35 Md. 352; *Masset* v. *Ruh,* 235 N. Y. 462 (139 N. E. 574).

"Where the lease confers the right to purchase at any time during the term, it may be exercised during

a renewal term, acquired under an option in the lease for a renewal upon the terms and conditions of the original lease." 35 C. J. p. 1043, § 188.

The lease ran 15 years; so did the option to purchase.

The decree in the circuit is affirmed, with costs to plaintiff.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.