## CAMBRIDGE DISCOUNT CORPORATION *v.* BOARD OF EDUCATION OF DORCHESTER COUNTY

[No. 41, January Term, 1943.]

*Decided March 16, 1943.*

456

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Frederick P. McBriety* for the appellant.

*James A. McAllister* for the appellee.

GRASON, J., delivered the opinion of the Court.

This proceeding was instituted by the filing of a bill of complaint by Elizabeth H. Cosby and her husband against numerous defendants, in which it is alleged that they are the heirs at law of a certain Dr. Joseph Ennals Muse, who granted, as hereinafter set out, a certain lot to trustees, to be used as a school, and that there has been a cessation of such use of said lot, which works a reverter to the heirs of the grantor. It is alleged that the property is not susceptible of partition without material loss and injury to the parties entitled to interest and in order to make a division it will be necessary that the real estate be sold and the proceeds divided among the parties in interest. There is exhibited with the bill a deed dated the 13th day of July, 1810, by Joseph E. Muse to Josiah Bayly and others. It recites: "That whereas the subscribers and contributors for building a school house in the Town of Cambridge have elected the above named persons as trustees for the regulation and management of the said School house and the several affairs and matters thereunto belonging and for the purpose of superintending and making laws and rules for the good government of the said school, its teachers and scholars." And in consideration of five cents Joseph E. Muse grants and conveys said lot to Bayly and others,

as: "trustees elected for the purposes aforesaid their heirs successors and assigns forever all and singular," the land which is specifically described, "for the uses and trusts aforesaid so long as they shall continue and remain trustees as aforesaid and in case any of them should die, resign or remove more than seven miles from the Town of Cambridge then to and for the uses purposes and in trust for such other person or persons as shall or may be elected trustee or trustees in their stead in manner and form aforesaid and so on forever in trust for the trustees to be appointed and chosen as aforesaid for the benefit of the said school, the management and regulation thereof."

"To have and to hold the said lot or parcel of ground above described and hereby conveyed unto the said Joseph Josiah Bayly and others, their heirs, successors and assigns, forever in trust and to and for the several uses intents and purposes aforesaid and to and for no other use intent or purpose."

There is also exhibted with the bill the will of Dr. Muse and it devises and bequeaths all of his real and personal property to persons specifically named and contains no residuary clause. It does not mention or refer to the lot conveyed by the deed before mentioned. There is also exhibited with the bill a resolution of the Board of Education of Dorchester County, dated March 12, 1940:

"Whereas, the school property located on Academy Street commonly referred to as Chicken Coop School is no longer used for school purposes, and

"Whereas, as stated in the deed given by Joseph Muse to Josiah Bayly and Others, H. D. 28, Folio 98, and dated July 13, 1810, this property is donated for use as a public school and on termination of such use is to revert to the heirs of the original owner, therefore

"Be It Hereby Resolved that the Board of Education of Dorchester County, Maryland, return to the said heirs of Joseph Muse the property donated and conveyed to that body by deed dated January 10, 1811."

There was a good deal of pleading in this case, but it is only necessary to say that there was an amended bill of complaint and a petition to further amend by interlienation mistakes in nomenclature and that the Cambridge Discount Corporation purchased the interest of certain parties defendant to the bill and it was made, by order of court, a party complainant.

Before that, the Board of Education of Dorchester County filed a long petition praying: (1) To be made a party respondent to the bill; (2) that the court construe the deed of 1810 from Muse to Bayly and others, and (3) for general relief. The court passed an order on this position, making the said Board a party defendant. To this petition so filed by said Board the plaintiff demurred.

Thereafter, to wit, on September 3, 1942, a petition was filed by the Board of Education of Dorchester County, in which the facts theretofore alleged in its previous petition were more formally and at large set out. In the second paragraph thereof it is alleged: "that within a short time after the execution of the aforesaid indenture by Joseph E. Muse, a school house was erected upon the land and property mentioned in such indenture, said school house being operated as a public school, and thereafter, from such time until sometime in the year 1928, the said land and property was occupied and used as a public school property continuously, under the supervision and control of the trustees named in the aforesaid indenture, or their successors. The Board of Education of Dorchester County becoming one of such successors by Act of the General Assembly of Maryland, as hereinafter provided." The third paragraph alleges: "That since the year 1928, the said land and property mentioned and described in said indenture dated July 13, 1810, has not been occupied as a public school and has not been operated as a part of the public school system of Dorchester County, Maryland, but since such time and continuing until the present time, has been used as a

meeting place for troops of the Boy Scouts of America, with the approval and consent of the Board of Education of Dorchester County, Maryland."

It is alleged that Frederick P. McBriety, solicitor for complainant, informed the School Board that the deed from Muse to Bayly and others included a provision for the reversion of said land and property therein mentioned and described to the heirs of said Joseph E. Muse if said land should no longer be used as a public school; that said deed does not in fact contain such a provision for reversion as aforesaid, and "acting upon such information W. Theodore Boston, Superintendent of Public Schools, prepared the resolution which was acted upon by the Board" and which is filed with the bill of complaint as Exhibit "B."

In the tenth and eleventh paragraphs it is alleged:

(10) "That your petitioner now believes and therefore alleges, that at the time of the passage of such resolution it was misinformed and mistakenly relied and acted upon such misinformation, and that the aforesaid indenture, or deed, executed, does not contain any such reversion and does not operate as such a reverter, so that the said land and property mentioned and described in the aforesaid indenture or deed, became and is the sole property of your petitioner in fee simple."

(11) "That your petitioner now is the absolute owner of the said land and property mentioned in the aforegoing indenture dated July 13, 1810, and executed by Joseph E. Muse as aforesaid, to the exclusion of all other claims against the same, and therefore the allegations of the complainants in this cause that the said property should be sold and the proceeds thereof distributed among the heirs of said Joseph E. Muse cannot properly be given effect, and the proceedings instituted by said complainants should be dismissed."

It prays: (1) That the court may declare the Board of Education of Dorchester County to be the sole owner of the said land and property known as Chicken Coop

School; (2) that the proceedings instituted by the complainants in this cause be dismissed; and (3) that your petitioner may have such other and further relief as its case may require.

On the same day the Cambridge Discount Corporation demurred to the petition filed by said Board to dismiss the proceedings instituted by plaintiffs. This demurrer was overruled by the court on the 3rd day of September, 1942, with leave to complainants, including the Cambridge Discount Corporation, to answer said petition of said Board on or before the 21st day of September, 1942, and from this decree overruling the demurrer of the Cambridge Discount Corporation, an appeal has been taken to this court by the complainants.

From the pleadings the following appears: That certain individuals, claiming as heirs of Dr. Muse, filed a bill under Section 159 of Article 16 of the Annotated Code of Maryland (1939), for the sale of the property in question, alleging therein that the same is not susceptible of partition without material loss and injury to the parties entitled to interest therein and that in order to make division of said interests, it will be necessary that the real estate be sold and the proceeds thereof divided among the parties according to their several interests. By the petition filed by the Board of Education of Dorchester County exclusive ownership in the property concerned is alleged to be in the Board and it prays the court to decree it to be "the sole owner" of the land involved. It will thus be seen that into this proceeding for the purpose of selling land in order to make distribution of the proceeds among those entitled thereto, the Board of Education has injected the question of title to the land involved. It is apparent, from a reading of the section of the Code referred to, that the Board was an improper party to this proceeding because it was not a "joint tenant, tenant in common, or any parcener, or any concurrent owner," and unless a party to a partition proceeding has an interest in the land that conforms to the statutory requirement the court would be without

jurisdiction to decree a partition of the land or to sell it for the purpose of dividing the proceeds of sale in case it could not be partitioned. In *Miller's Equity Procedure,* Section 397, under the heading of "Sale for Partition," it is stated: "The issue in the proceeding is not to try titles nor to determine who are the owners of the estate as between adverse claimants; but whether as among those entitled in common, it should be sold instead of divided. It cannot be made to serve as an action of ejectment. The object is to secure a sale for the benefit of those assumed to be the owners of the property, and the defendants are summoned to be heard upon the prayer of the bill to sell instead of to divide the property."

In the case of *Savary v. DaCamara,* 60 Md. 139, at page 145, which case dealt with a bill to sell for the purpose of partition, the court said:

"The real issue in such a proceeding in chancery is not to try titles, not to determine who are the owners of the estate as between adverse claimants; but whether, as among those entitled in common, it should be sold instead of divided. * * *

"If the complainants have no interest in the estate, or if the defendants made by the bill have a paramount and exclusive right to the property, there is wanting that community of interest upon which the jurisdiction of a court of equity is predicated to decree partition, or the sale to facilitate it. * * *

"A bill for partition cannot be made to serve as an action of ejectment, and is not designed to settle adverse rights, but only to subserve the convenience of those whose interests in the subject-matter are conceded. Parties acquire no rights by a decree for sale by way of partition they had not before, as the sale is merely a process to enable them to enjoy more effectually the rights they previously held. The object of the bill is to secure a sale for the benefit of those assumed to be the owners of the property; and the defendants who are, or ought to be, those conceded to have a common or concurrent

interest, are really summoned, not to litigate a denial of their title, but, as jointly interested, to be heard upon the prayer of the bill to sell, instead of divide, the property, as being most to the advantage of all concerned. * * *

"If parties supposing themselves entitled to property, were to partition it among themselves, would that conclude the rightful owner? How is their title strengthened or added to by invoking the court to aid the partition among themselves by decreeing a sale? Such a decree does not alter or render more valid their title; it is simply based upon it."

In that case the question of title was not involved. It was conceded by all parties thereto that a Dr. Giraud died seized and possessed of the property concerned. The question was whether he left heirs on his father's side who would take to the exclusion of maternal relatives.

It appears that the court in this case had no jurisdiction to try title to the property here concerned as between the parties in the bill for partition and the Board of Education of Dorchester County, and the demurrer filed to this petition should have been sustained and it was not a proper party to the partition proceeding and the order of court making the said Board a party was erroneous.

We are asked to construe the deed of the 13th of July, 1810, by which Joseph E. Muse conveyed to Bayly and others the property involved in this case. But in the resolution of the Board of Education, filed as Exhibit "B" with the bill, it states that this property was "donated and conveyed to that body by deed dated January 10, 1811." This deed is not in the record and it is not known by whom it was conveyed or under what terms, conditions and covenants. It might well be that a holding by the Board under a deed of 1811, which followed the deed we are asked to construe, might materially affect the title to the property concerned, and a construction of the deed asked for in this case could not determine the question of title, and would be mere dictum.

As pointed out above, if the parties to the bill for partition in this case are not the holders in common of the title to the property sought to be sold, a decree authorizing its sale could not create a title that did not exist in the parties to the case. And a purchaser under such decree would take no rights in the property, for he would get only such title as the parties to the proceedings possessed, and if they had no title to the property, no right or title in the same would pass. In such case it would be futile for such a purchaser to institute ejectment against the true owner in possession.

If the Board of Education thinks that this proceeding casts a cloud upon the title to the lot here in question, which it claims to be in possession and owner of in fee simple, the law provides a remedy, but it cannot try the title to this lot in this proceeding. The order of the court below, dater the 3rd day of September, 1942, overruling the demurrer of the Cambridge Discount Corporation to the petition of the Board of Education of Dorchester County, will be reversed. We have noted that this is an appeal from an order overruling a demurrer which is ordinarily interlocutory in its nature. In this case, the order finally settles the right of the appellee to be a party to this proceeding and we consider it in the nature of a final order.

*Order reversed, with costs to appellant, and case remanded.*