FILLMORE COOK, ET AL., *v.* GRACE L. BOEHL, ET AL.

[No. 137, October Term, 1946.]

584

*Decided June 11, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Fillmore Cook* and *Joseph Townsend England* for appellants.

*Edward L. Ward,* with whom were *Rome & Rome* on the brief, for the appellees.

*Roszel C. Thomsen, amicus curiae,* for J. Gilbert Prendergast, trustee.

DELAPLAINE, J., delivered the opinion of the Court.

The purpose of this suit is to sell for the purpose of partition the lot of ground improved by the Aurora Theatre at 7 and 9 East North Avenue in the City of Baltimore.

The suit was instituted on August 22, 1946, by Grace L. Boehl, title holder of an undivided one-half interest in the property, against Fillmore Cook, owner of the other one-half interest, and Catherine E. Cook, his wife. Miss Boehl alleged in the bill of complaint that the Paradise Amusement Company, a Maryland corporation, is the lessee of the entire first floor of the building, except the store room, at a rent of $60 per week, and the second floor at a rent of $65 per month, while the store room is leased to others at $75 per month. She asked the Court to appoint a trustee to sell the property and a receiver to collect the rents until the ratification of sale.

Cook, in answering on September 5 the prayer for receivership, averred that the Paradise Amusement Company is "a yearly tenant with a tenancy expiring on December 31st in each and every year"; but in his answer on September 23 to the bill of complaint, he averred that the company is "a tenant for a term of years." He conceded that the real property cannot be divided in kind without loss or injury, and that it should be sold when the proper parties are before the Court; but he asserted that Miss Boehl, who is employed as a secretary in the law offices of Rome and Rome, is merely a nominal grantee of the one-half interest, while the real owners are Edward L. Ward, H. Paul Rome and Morton E. Rome. He claimed that the fixtures in the theatre are not a part of the real estate. He also filed on September 23 a cross-bill praying the Court to appoint a trustee to sell the real estate, on condition that the fixtures, including the marquee, electric signs, the ticket booth, the air conditioning system, and 414 theatre seats, are not included in the sale.

On September 25 Edward L. Ward and the Romes petitioned the Court for leave to intervene in the case. They admitted that they are the real owners of one-half interest, and that Miss Boehl is merely a nominal holder of the title. After they were made parties complainant, they adopted the allegations of Miss Boehl's bill of complaint.

On October 25 the Paradise Amusement Company prayed for permission to intervene. After this corporation was made a party defendant, it filed an answer, signed by Fillmore Cook, both as president and solicitor, alleging that the Aurora Theatre was built expressly for it in 1910 by Eugene Cook, now deceased, Fillmore's father; that it has occupied the property continuously since that time; that its lease does not expire until December 31, 1949; and that it had given notice to Ward and the Romes of its intention to redeem its leasehold interest, and hence no sale of the property is necessary.

On November 4 the Court decreed that the property is not susceptible of division in kind without loss or injury to the parties interested, and appointed J. Gilbert Prendergast trustee to sell the property. The Court authorized the trustee to collect the rents until the ratification of sale, and declined to appoint a receiver. The Court also determined that the Paradise Amusement Company has been a tenant from year to year since December 31, 1939, and is not entitled to any right of redemption. Both Cook and the company appealed from the decree.

On November 12 the trustee petitioned the Court to instruct him regarding the proper amount of rent to collect, the date when the theatre lease expires, and the ownership of the fixtures. On December 3 the Court, recognizing the difficulty of the questions that had arisen, appointed Roszel C. Thomsen solicitor for the trustee. The Court also passed an order on the same day to clarify the provision in the decree for the advertisement of the sale.

Originally there were four shareholders of the capital stock of the Paradise Amusement Company. Eugene Cook owned 25 shares, while the remaining 75 shares were held by three of his sons, Harry, John and Fillmore. When Cook died in 1916, his widow, Mary M. Cook, became the sole owner of the real estate and his 25 shares. Upon her death in 1920, her nine children, Eugene, Jr., Harry, Mamie, William, Barbara, John, Fillmore, Frank and Florence, became the owners of the property and her stock. In 1929 Frank sold his interest in the property and stock to the other eight owners. Upon Harry's death, his widow, Lula, became the owner of his interest in the property and the stock. In 1931 Lula, John and Fillmore bought from all the others their entire interest in the property and the stock. In 1933 Lula sold her interest in the property and the stock to Fillmore Cook and Florence Evelyn Cook, John's widow, who thus became the sole owners of the property. By mutual agreement Fillmore became the owner

of 49 shares of stock, his wife 2, and Florence Evelyn Cook 49. Florence Evelyn Cook died in 1943, leaving her estate to her daughter, Audrey Louise Hollyday, upon condition that if she should decide to dispose of her interest in the property and her 49 shares of stock, she must first offer it to her Uncle Fillmore for $20,000. Mrs. Hollyday filed a caveat to the will, and the will was held void by the Superior Court of Baltimore City. The ruling was affirmed by the Court of Appeals. *Cook v. Hollyday*, 186 Md. 42, 45 A. 2d 761. On August 16, 1946, Mrs. Hollyday, having inherited her mother's one-half interest in the real estate and her 49 shares of stock unconditionally, sold the one-half interest to Grace L. Boehl, but kept her 49 shares of stock. In September Miss Boehl notified the Paradise Amusement Company that the tenancy would terminate on December 31.

On January 6, 1947, the Court, ruling on the questions posed by the trustee, passed an order giving the following instructions: (1) Miss Boehl's notice to the lessee in September, 1946, terminated the lessee's tenancy as to her one-half interest on December 31, 1946, but did not terminate the tenancy as to Cook's interest, with the result that after that date the lessee became a cotenant with Miss Boehl; (2) the trustee should sell the property free and clear of any tenancy or right of possession of the lessee; (3) the rent to be paid by the lessee for Miss Boehl's interest after December 31, 1946, until the ratification of sale shall be $225 per month; and the rent to be paid by it for Cook's interest shall be $30 per week for the first floor, excepting the store room, and $32.50 per month for the second floor; (4) the fixtures shall remain parts of the realty to be sold by the trustee; (5) the property shall be sold subject to the lease of the store room held by Jacob Silberman and wife, trading as Milton's Men's Shop; and (6) the trustee shall proceed to sell the property unless a supersedeas bond in the penalty of $10,000 shall be filed by any party appealing.

On January 22 the Paradise Amusement Company appealed from the two orders of December 3 and the order of January 6. On January 27 Cook entered similar appeals. While the appeals from the orders of December 3 were not taken within 30 days, we take occasion to say that appellants invoked the aid of the Court and imposed upon the trustee duties not ordinarily imposed in a partition suit. The Court had inherent power to appoint an attorney to serve as the trustee's solicitor in this case. It is an unquestioned rule that when a trustee in a court of equity finds it necessary to obtain legal assistance in the management of the trust estate, the court will allow him such reasonable fees as he may be required to pay in properly taking the advice and procuring the direction of counsel. *Laroque v. Candolle*, 4 Md. Ch. 347.

The Maryland partition statute provides that if any land or any right, interest or estate therein cannot be divided without loss or injury to the parties interested, the court of equity may decree a sale thereof and a division of the money arising from such sale among the parties according to their respective rights. Code, 1939, art. 16, sec. 159. Under this statute the Circuit Court had authority to decree the sale of the real estate owned by the tenants in common, and to pass upon the issues raised by Cook and the corporation of which he is president. The corporation voluntarily intervened in order to assert its claims and to secure an adjudication as to the nature of the tenancy, its right to redeem, and the ownership of the fixtures. It was not until after the decree was entered that it challenged the jurisdiction of the Court. Undoubtedly they cannot now object to the jurisdiction of the Court to pass upon questions which they prayed the Court to decide.

It is true that a bill for the sale of realty for the purpose of partition is not designed to try titles or to determine who are the owners of the estate as between adverse claimants. The object of such a suit is to make a sale for the benefit of the owners of the property.

The defendants with a common interest are summoned, not to litigate a denial of their title, but to be heard upon the prayer to sell the property. *Cambridge Discount Corporation v. Board of Education of Dorchester County,* 181 Md. 455, 30 A. 2d 753. However, where a court of equity has assumed jurisdiction of a cause of action for any purpose, it will ordinarily retain jurisdiction for all purposes, deciding all issues raised by the subject-matter of the dispute between the parties, and award complete relief, even as to matters over which the Court would not have had jurisdiction originally, thus disposing finally of the litigation and accomplishing complete justice between the parties. *McKeever v. Washington Heights Realty Corporation,* 183 Md. 216, 37 A. 2d 305; *Austraw v. Dietz,* 185 Md. 245, 44 A. 2d 437; *Cook v. Hollyday,* 186 Md. 42, 45 A. 2d 768.

We affirm the chancellor's ruling that the tenancy of the Paradise Amusement Company is from year to year, and not for a term of years. Appellants urged that Eugene Cook leased the theatre in 1910 for 10 years with the right to renew for subsequent terms of 10 years each. They then submitted four leases upon which they relied. One, signed by Mary M. Cook, in October, 1919, was intended for the period from January 1, 1920, to December 31, 1929. The second, signed by the children in 1921, was intended for the period from October 17, 1921, to December 31, 1929. The third and fourth were prepared in December, 1929, for the period from January 1, 1930, to December 31, 1939. It was in 1929 that the corporation found it necessary to install a sound system in the theatre; and, as the projection room in the auditorium was not large enough for the sound equipment, an additional lease was drawn for the second floor to accommodate the projection equipment. These leases, however, were not signed by any one on behalf of the corporation and were not recorded. The Maryland Conveyancing Act provides that no estate above seven years shall pass or take effect unless the deed conveying the same is executed, acknowledged and

recorded as provided in the Act. Code, 1939, art. 21, sec. 1. It is definitely held that a lease for more than seven years, if not recorded in accordance with the Conveyancing Act, can pass no legal interest or estate in the land. *Howard v. Carpenter,* 11 Md. 259, 275. Where a lease of land for more than seven years is executed, but not recorded as required by the Act, and the tenant enters into possession, and pays yearly rent, which is accepted by the landlord, the tenancy is from year to year. This tenancy is not created by the invalid lease, but is implied by the law from the entry into possession of the premises and the payment and acceptance of the rent. *Falck v. Barlow,* 110 Md. 159, 162, 72 A. 678, 17 Ann. Cas. 538. Of course, a person purchasing property with knowledge that a tenant is in possession of the property is charged with notice as to the tenant's rights under the lease to him. *Waters v. Wambach,* 140 Md. 253, 256, 117 A. 751. But in the case before us the fact that the tenant was in possession did not give validity to the invalid leases. Neither Miss Boehl nor Ward nor the Romes ever saw any of the purported leases at the time of the purchase of the one-half interest. Ward testified that when Cook was requested in the caveat case in the Superior Court to produce his leases, he claimed that he could not find them, and though he thought they had been recorded, he found that they were not on record.

It is clear that the lessee was not entitled to any right of redemption. The lessee relied on the statutory provision that all rents reserved by leases of land made in this State after 1900 "for a longer period than fifteen years" shall be redeemable at any time after the expiration of five years from the date of such leases, at the option of the tenant, for a sum of money equal to the capitalization of the rent at a rate not exceeding six per cent. Laws of 1900, ch. 207, Code, 1939, art. 21, sec. 111. There is no merit in the lessee's contention because, if for no other reason, the purported leases were not recorded as required by the statute.

It was contended that the Court below lacked jurisdiction to pass the order of January 6, 1947, because of the fact that appeals had already been entered from the decree of November 4, 1946. It is true that if an appellant desires to stay the execution or suspend the operation of a decree or order, he must give a bond to indemnify the appellee against all loss or injury which he may sustain by reason of the appeal and the stay of the execution or the operation of such decree or order. Code, 1939, art. 5, sec. 33; *Shirk v. Soper,* 114 Md. 269, 283, 124 A. 911. Thus an appeal from a decree of a court of equity directing the sale of property does not stay the proceedings unless an appeal bond is filed or a stay is procured from the lower court. *Middendorf v. Baltimore Refrigerating & Heating Co.,* 117 Md. 17, 25, 82 A. 1047; *Bowles v. M. P. Moller, Inc.,* 163 Md. 670, 684, 164 A. 665. But the only purpose and effect of an appeal bond is to stay execution or suspend the operation of the decree or order appealed from. The entry of an appeal with or without an appeal bond does not necessarily stay all further proceedings in the cause in reference to rights not passed upon or affected by the decree or order appealed from. *Barnum v. Barnum,* 42 Md. 251; *Avirett v. State,* 76 Md. 510, 511, 25 A. 676, 987.

We agree that the notice given by Miss Boehl to the lessee in September, 1946, terminated the tenancy as to her interest on December 31, 1946. By express provision of a local law, when any lands or tenements in the City of Baltimore are held from year to year, the tenancy shall be terminated if the lessor gives to the tenant 90 days' notice before the end of the year. Baltimore City Charter, 1938 Ed., sec. 1125. On the other hand, Miss Boehl's notice did not terminate the tenancy as to the interest of Fillmore Cook. Tenants in common may make such reasonable use of the common property as is necessary to enjoy the benefits of such ownership. Each cotenant has an equal right of entry and possession, and one cotenant cannot exclude the others

by his own occupation of the land. Hence, one cotenant has no power to make a lease of the entire estate that will be binding upon his cotenants without their consent. Any cotenant, however, can lease his undivided interest either with or without the consent of the other cotenants. Such a lease transfers to the lessee for the term of the lease the possession and right in the property held by the lessor, and makes the lessee a tenant in common with the other owners. *Prairie Oil & Gas Co. v. Allen*, 8 Cir., 2 F. 2d 566, 40 A. L. R. 1389. Likewise, one colessor cannot terminate the lease as to the interests of the other colessors, if the notice to terminate is not in behalf of the others; but one colessor can terminate the lease as to his own interest without the concurrence of the others. *Cook v. Hollyday*, 186 Md. 42, 45 A. 2d 768. While the Court ruled properly as to the termination of the tenancy, there is no justification for the fixing of rent payable by the lessee other than that agreed upon by the parties.

It is recognized that when property is partitioned after a lease has been executed by one cotenant, and the lessee is not a party to the proceeding, the partition decree is subject to the lease so far as the interest of that cotenant is concerned. *Durette v. Miller*, 60 Or. 91, 118 P. 202, Ann. Cas. 1918D, 1163. When a lease has been made either before or after the filing of a bill for partition of real estate, the lessee cannot be forcibly evicted by a purchaser deriving title through the partition sale, unless the decree of the court of equity in the partition suit adjudicates the rights of the lessee and orders him to surrender possession. *Thruston v. Minke*, 32 Md. 571; *Schwartz v. McQuaid*, 214 Ill. 357, 73 N. E. 582, 105 Am. St. Rep. 112. In the present case there is the same need for a partition of the leasehold interest as of the fee, and in view of the circumstances the chancellor properly directed that the real estate should be sold free of any tenancy or right of possession of the lessee. Cook, one of the cotenants, did not object to the sale. In fact, he advised the Court that the real

estate is not susceptible of division in kind, and prayed the Court to appoint a trustee to make a sale. Therefore, he cannot object to a decree for the sale of the property free of the tenancy. Any claim which the lessee may have on account of its right of possession may be discharged out of the proceeds of sale.

At the hearing of this appeal, the solicitors for appellees announced that they abandon all claim to the fixtures, and agree that the company have all the fixtures and remove them at its expense, provided that a definite time is set by the Court within which they shall be removed, or the company may allow the trustee to sell the fixtures to determine their market value and turn over to it the proceeds of sale. In view of this concession, we will reverse that part of the order which directs the trustee to sell the fixtures with the real estate.

> *Decree of November 4, 1946, affirmed; and order of January 6, 1947, affirmed in part and reversed in part, and cause remanded for the passage of an order in conformity with this opinion; the costs to be paid out of the trustee's funds upon the sale of the real estate.*