# HANNAH THOMAS *vs.* THE GOTTLIEB, BAUERN-SCHMIDT, STRAUS BREWING COMPANY.

*Option to Purchase Given to Lessee of Property—Sale of the Property to Party Having Notice of the Option—Mistake in Lease—Specific Performance—Mutuality of Obligation.*

A lease of property for one year from May 1st, 1900, provided that "this agreement with all its provisions and covenants shall continue in force from term to term, after the expiration of the term above-mentioned," subject to the right of either party to terminate the same at the end of any term by giving thirty days' notice. The lease further provided "that the said tenant shall have the right to purchase said property at the end of said term for the sum of $2,000." During the second year of the tenancy the lessee notified the lessor of his desire to purchase and tendered the stipulated sum. *Held*, that the option to purchase was not limited to the first year of the tenancy but continued thereafter, because the option was a covenant and the lease expressly provides that all its covenants shall continue in force from term to term

after the expiration of the first year unless the lease be terminated by notice.

When a party purchases property from a lessor thereof with knowledge that the tenant has an option to purchase the same he acquires no right superior to that of the tenant who exercises his option.

The allegation, in an answer to a bill for specific performance of an agreement to sell the property to the tenant, that the option to purchase was inserted in the lease by mistake, and that the lessor did not intend to give such option to be exercised at any time during the term, *held*, upon the facts to be unsupported by the evidence, and that consequently there was no such misapprehension as to the nature of the agreement as would justify the Court in refusing to grant specific performance.

An option to purchase property for a specified price within a definite time is a continuing offer which upon acceptance within that time, becomes a completed contract. And since each party has the right to compel specific performance by the other the contract is not lacking in mutuality.

Appeal from the Circuit Court for Baltimore County, (BURKE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Edward S. Kines* (with whom was *Eugene J. Cronin*, on the brief), for the appellant.

*Elmer J. Cook* (with whom were *Crain & Hershey* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is an appeal from a decree passed by the Circuit Court for Baltimore County, sitting in equity. The decree required the appellant, who was the defendant below, to execute specifically a certain contract for the sale of a house and lot situated in that county, by conveying the same to the appellee. The Gottlieb Bauernschmidt Straus Brewing Company, a body corporate, filed its bill of complaint against Hannah Thomas, on April the fourteenth, nineteen hundred and four. The bill alleged in substance that the defendant, the appellant here, being the owner of the real estate, in controversy, subject to

an annual ground rent of forty-five dollars, demised and leased the same to the Maryland Brewing Company, a body corporate, for the term of one year beginning on the first day of May, 1900, and ending on the thirtieth day of April, 1901, at a specific rent, payable monthly, and that the lease contained a proviso "that this agreement, with all its provisions and covenants, shall continue in force from term to term after the expiration of the term above-mentioned, provided, however, that the parties hereto, or either of them, can terminate the same at the end of the term above-mentioned, or of any term thereafter, by giving at least thirty days' previous notice thereof in writing." The bill further alleged, and the lease itself confirms the averment, that the next succeeding clause of the agreement stipulated, "that the said tenant shall have the right to purchase said property at the end of said term, for the sum of two thousand dollars." The bill charges that on August the tenth, 1901, the plaintiff, the appellee here, acquired all the rights and property of the Maryland Brewing Company including the lease and option of purchase aforesaid with the knowledge of the appellant, who recognized the appellee as her tenant and as the assignee of said agreement of lease and option of purchase. That desiring to avail itself of the option of purchase the appellee corporation during the continuance of the lease so notified the appellant "and duly tendered the sum of two thousand dollars ($2,000) upon the execution to it of a proper deed of said premises, and is now ready to pay the same, but the said Hannah Thomas refuses to receive it;" and that she "refuses to make a conveyance of the said property to your orator, as she rightfully ought to do." The prayers for relief are, first, that the agreement may be specifically enforced; secondly, for general relief.

The bill was demurred to, the demurrer was overruled and the appellant then answered. The main defenses set up in the answer are, first, that the option of purchase terminated on April 30th, 1901, without the Maryland Brewing Company having made any attempt to close the option. In view of one of the contentions relied on in behalf of the appellant it will

not be amiss to advert at this point, to an admission contained in her answer under oath. That admission is as follows: The Maryland Brewing Company "desiring to use the property for a saloon, said through its accredited agent, that it did not care to purchase until they knew the character and amount of business that could be done, and requested an option of one year to test the business and promised that if the same was satisfactory to purchase the same at the end of the year, to wit, on the 30th day of April, 1901, *and upon the promise of this defendant to give said option it was incorporated in the agreement of rental.*" The second ground of defense is that the appellee never had an option of purchase inasmuch as the option had expired before the appellee succeeded to the rights of the Maryland Brewing Company; and thirdly, that no claim was ever made by the appellee that it intended to exercise any option until after the appellant had sold the property to another person. A general replication was filed and testimony was then taken.

At the argument in this Court three reasons were assigned by the appellant for a reversal of the decree, viz., first, as contended in the answer, because the lease did not give an option which extended beyond April 30th, 1901, and as the option had not been availed of before that date it had expired and is no longer binding. Secondly, because the extrinsic facts proven in the case show that the appellant never intended to give any option at all beyond the first year, and therefore, that it would be inequitable to force her to make a conveyance which was not within her contemplation, when she signed the lease. Thirdly, because, the contract as embodied in the lease is not mutual and cannot, therefore, be enforced specifically at the suit of the party not obligated by it to purchase. These three reasons will be considered in the order just named.

*First,* then, what is the true interpretation of the provision of the lease relating to this subject? There is a distinct agreement that the tenant shall have the right to purchase the property "*at the end of the said term*" for the sum of two thousand

dollars.   What is the end of said term?   Is it the end of the
first year; or is it the end of any succeeding year thereafter
during the continuance of the lease?   The lease itself must
and does furnish an answer.   "This agreement with *all* its
provisions and *covenants* shall continue in force from *term to
term* after the expiration of the term above mentioned"—that
is after the term of one year ending April 30th, 1901—"pro-
vided, however, that the parties hereto or either of them can
terminate the same at the end of the term above mentioned,
*or of any term thereafter,* by giving at least thirty days pre-
vious notice thereof in writing."   The parties themselves have
in the contract itself defined the meaning of the phrase "*at the
end of. said term,*" for they have declared that the agreement
with *all* its provisions and covenants, and therefore with the
provision and covenant giving the option of purchase, shall
continue in force from *term to term after* the expiration of the
first year, though to each of the parties the right was reserved
to terminate the lease at the end of the first term, or of *any*
term thereafter.   It is obvious, then, that the parties to the
agreement defined each year to be a term within and subject
to every provision and covenant applicable to the first year;
and hence, it must follow that if the option of purchase was a
provision or covenant which could have been exercised during
the first year, it continued in force during every succeeding
year or *term* until the lease was brought to an end by the
method therein prescribed.   The right of the tenant to pur-
chase the property is, as was stated by this Court in *Maughlin
v. Perry & Warren,* 35 Md. 357, "a continual obligation run-
ning with the lease on the part of the lessor, with the option
in the tenant to accept the same or not within that time."
*Maughlin* v. *Perry & Warren* is decisive of this branch of the
case at bar.   It appeared there that one Wells, on March 9th,
1864, rented certain property to Hynson for three years, re-
newable for a similar period, with covenant binding the lessor
to sell and convey unto the lessee the demised premises for
the sum of fifteen hundred dollars at any time before the ex-
piration of the lease or tenancy.   On March 15th, 1867,

Wells sold the same property to Maughlin for sixteen hundred dollars and the purchase-money was paid. Wells died intestate before the expiration of the three years for which the lease had been renewed. All the rights of Hynson, the tenant who had the option of purchase, became vested through *mesne* assignments in Perry and Warren. Under these circumstances six days before the expiration of the renewal of the lease, a bill was filed by Perry and Warren alleging that they were ready to pay the stipulated sum of fifteen hundred dollars and praying for a specific performance of the contract. Maughlin resisted on the ground that the acceptance of the option had not been in time, since it was not made during the original term of three years, and not until six days prior to the expiration of the renewal term ; and that the mere offer in the bill to pay the money was not a sufficient compliance with the contract. This Court ruled against both contentions using the language hereinbefore quoted. As Maughlin had notice of the contract which gave Hynson the option it was held that he did not acquire any greater right than Wells possessed. In the case at bar, Smith, who purchased from the appellant, knew of the option contract before he bought and he secured no right superior to that of the appellee.

It would seem, then, both in view of the terms of the lease and in virtue of the decision by this Court in *Maughlin* v. *Perry & Warren*, that the option of purchase incorporated in the lease was a continual obligation running with the lease on the part of the appellant with the option in the tenant to accept the same or not during each successive term which the lease created ; and therefore the option had not expired when a tender was made of the agreed purchase-money and a deed was demanded during the continuance of the lease. So much for the defenses set up in the answer.

*Secondly.* Do the extrinsic facts show that the appellant did not intend to give any option at all beyond the first year and that, consequently the insertion of the renewal and extension clause providing therefor was a mistake which ought not to be binding on the lessor ? The paragraph we have quoted

from the answer distinctly admits that an option of purchase was given for one year.   It is a settled principle that a Court of equity will not grant its affirmative remedy to compel the defendant to perform a contract, which he did not intend to make; and which he would not have entered into, had its true effect been understood.   *Sommerville* v. *Coppage*, 101 Md. 519, But the evidence shows that an effort was made by the Maryland Brewing Company within the first year to close the option and at the earnest solicitation of the appellant the matter was permitted to stand open and the relation of landlord and tenant was allowed to continue under the lease. Though Mrs. Thomas denies this, the preponderance of testimony is against her and it is reasonably clear that she asked the agent of the Maryland Brewing Company not to insist upon closing the option during the first year of the tenancy, without intimating that it was her understanding that the privilege to purchase lapsed at the expiration of the first term of one year.   Whilst she stated in one portion of her testimony that she said to the person who took the lease to her for her signature, "there's one mistake, that's the two thousand dollars, I never set no price," she admits a little later on that had the lessee taken the property "when the year was up it would have been all right."   She must therefore have known that the purchase price had been agreed upon at two thousand dollars, and as she read the lease before signing it and had her son to read it with her, she must have understood not only that an option of purchase at a named price had been provided therein, but also that the same option continued from term to term during the period the lease remained in force.   ·We do not find that the testimony makes out such a case of misapprehension or misunderstanding in respect to the provisions of the agreement as would justify a Court of Equity in refusing to grant the relief prayed for.   The evidence does not bring the case within the principle applied in *Sommerville* v. *Coppage*, and that class of decisons.

*Thirdly.* The defence relied on in the argument and founded on the supposed want of mutuality in the contract, cannot pre-

vail. If a contract is lacking in mutuality it cannot be enforced. Whenever, as a general proposition, a contract is from any cause incapable of being enforced against one party, that party will not be permitted to enforce it against the other. Both parties must have a right to compel a specific performance at *the date of the decree*, or neither will have it. *Dixon* v. *Dixon*, 92 Md. 440. Agreements upon condition and options are within the rule, but when the condition has been performed or *the option has been closed* the right of the respective parties to demand specific performance becomes mutual. *Dixon* v. *Dixon, supra.* Here the option was closed within the life of the lease. When the appellee corporation tendered itself ready to pay the money and announced to the appellant its intention to purchase the property under the terms of the agreement, the contract ceased to be a mere option and became a mutually binding obligation which could have been enforced at the instance of the appellant just as effectively as at the suit of the appellee. Before the bill was filed, and of course before the decree was signed, both parties to the contract had an equal right to compel a specific performance. The cases cited by the appellant's counsel are not at variance with this conclusion. Take, for illustration, the case of *Geiger & Patterson* v. *Green*, 4 Gill, 472, where the contract under which Green claimed granted him a mere "privilege of digging and moving ore" at twenty-five cents per ton on the farm of Charlotte Owings, but imposed no obligation on Green to do anything but to pay for each ton of ore he might dig. He did not contract to dig any particular quantity or any ore whatever and he had entered into no obligation of any sort, and of course no decree could be passed requiring him to specifically perform something which he had not undertaken to do. But an option of purchase at a specific price is a very different thing. It is a continuing offer for a definite time which upon acceptance within that time becomes a definite contract mutually binding on both parties and hence, capable of being enforced by either against the other. The case of *King* v. *Warfield*, 67 Md. 246, is also totally dissimilar. That was a

suit on a conditional contract—a contract which was to be binding only·in the event that a contingency, over which a third party had exclusive control, should happen. The contingency did not happen and consequently the incomplete contract never ripened into a perfected agreement, and hence, no suit could be maintained upon it. In *Duvall* v. *Myers*, 2 Md., Ch. Dec. 401, an application was made for the specific performance of a contract for the sale of growing timber, but the contract relied on was not signed by the vendor Duvall or by anyone for him, and when he sought to enforce it he was met with the objection that it was lacking in mutuality, and since, by reason of his not having signed it, it could not be enforced against him at the suit of the vendee, he could not compel the vendee who had signed it, to execute it. The Chancellor observed: "The paper says I have sold—Who has sold? Who is the party who has contracted with the defendant? The paper does not inform us, and it may as well be anyone else as Duvall. Where, then, in the agreement, which he seeks to have specifically executed against the defendant, is the reciprocal obligation on his part?" The case is clearly distinguishable from the one at bar. In *Billingslea, Extr.* v. *Ward*, 33 Md. 48, a bill was filed by Ward for the specific enforcement of a parol contract alleged to have been made between one Green, in his lifetime, and Ward for the sale of land by the former to the latter. The evidence adduced by Ward consisted of declarations made by Green, and the evidence adduced by Green's executor comprised declarations made by Ward to the effect that the contract was not final or conclusive, but left Ward the option to retain or to surrender the property of which, at the time the alleged contract was made, Ward was tenant. There was no sufficient proof of the contract and no adequate evidence of part performance to take the case out of the Statute of Frauds. *Tyson* v. *Watts*, 7 Gill, 124, was quite similar to *Geiger* v. *Green*, *supra*. "After carefully collating these contracts," said this Court in *7 Gill, 157*, "we think the case at bar cannot be distinguished from the case of *Geiger* v. *Green*." No further comment is needed to show that *Tyson* v. *Watts*, is inapplicable to the case before us.

It is undoubtedly the settled doctrine of Courts of equity that relief by way of specific performance is not a matter of right to be demanded *ex debito justitiae*, and that to warrant the granting of such relief the contract must be fair, certain and mutual; it must be founded on an adequate consideration and must be free from any suspicion as to its *bona fides.* All these requisites have been met. The certainty and mutuality of the agreement have been considered; there is nothing in the record to question its fairness; the consideration has been shown to be adequate and full, and there is not a suggestion of bad faith in the entire transaction.

We see no reason to disturb the decree of the Circuit Court and it will accordingly be affirmed.

> *Decree affirmed with costs above and*
> *below.*

(Decided December 7th, 1905.)