# EDNA M. SCHAEFFER, ET AL. *v.* PAUL BILGER

[No. 72, October Term, 1945.]

*Decided February 8, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, GRASON, and HENDERSON, JJ.

*Nathan Patz* for the appellants.

*Nathan Hamburger*, with whom were *H. Paul Rome* and *Rome, Rome & Hamburger* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This case deals with the right of a tenant to exercise an option, contained in a written lease, to purchase the leased property after the expiration of the term created by such lease but during an extension of that term, made by the tenant under a right given him in the lease. The original and only lease was made September 29, 1936, by the appellants as landlords to the appellee as tenant. The property demised was 1830 East Monument Street, in the City of Baltimore, and the term of the lease was from the 10th day of October, 1936, to the 9th day of October, 1939. The rental was $80 a month for the first twelve months, $90 a month for the second twelve months and $100 a month for the third twelve months. The lease contained most of the usual covenants in documents of that nature, with a permission to sublet and a provision that alterations or repairs should be done by the tenant at his own cost and expense. After these covenents, appeared the following: "And it is further agreed that the said Tenant may extend the term hereby created for another term of five years at the annual rental of Fifteen Hundred Dollars ($1500.00), payable monthly in advance, subject to the aforegoing covenants and conditions otherwise herein contained, upon giving to the Landlords at least three months' written notice prior to the expiration of the term hereby created to terminate on the 9th day of October, 1939; such notice in writing to be given to the said Landlords at least three full months prior to such termination date."

Then in a subsequent paragraph the option to purchase is given in the following words: "And it is further agreed that prior to default therein on the part of the Tenant, and at any time during the period of the term hereby created upon giving sixty days previous notice to the Landlords, the Tenant may purchase the said premises known as No. 1830 East Monuument Street, Baltimore, Maryland, as same now exists, subject to an annual ground rent of $40.00, for the sum of Eleven Thousand Five Hundred ($11,500.00) cash; it being further agreed and understood that any time during the operative period of this option, the Landlords may, upon giving to the Tenant written notice that they will sell the said premises at the expiration of thirty days to another prospective purchaser enter into an agreement of sale therefor, unless within that period the Tenant shall give notice of his intention to exercise the aforegoing option upon the aforementioned terms; it being further understood and agreed that if said thirty days' written notice from the Landlords to the Tenant shall expire without the exercise by said Tenant within that period of the aforementioned option, then upon payment to the Tenant of the sum of Two Hundred Dollars ($200.00) the option hereby conferred upon the Tenant as aforesaid, shall be and become void and of no further effect."

The appellee entered into possession of the premises and made a number of alterations, additions and permanent improvements for the purpose of rendering the building suitable for his business. These improvements were extensive as is shown by the fact that he excavated the entire lot, with the exception of 15 feet, in order to provide a basement, tore down the entire building between two 4" walls except for a part of the front and built 13" walls the entire length of the building from basement to roof on the second floor. The tenant testified that the cost of these alterations and improvements was within $100 of $20,000 and that it took eleven

months for him to put the building into condition before he could use it.

On May 8, 1939, well within the period required by the lease, the tenant gave the landlords notice that he desired to renew the lease for the next five years. In the same letter, he requested that the landlords postpone the advance in rental provided in the contract because of business conditions. The landlords agreed that the increase in rental should not be paid for a year, and there was some difficulty in collecting it after that time, al-thought it subsequently was collected.

The new term of five years was due to end on October 9, 1944. On July 26, 1944, appellants' counsel wrote to counsel for appellee stating that landlords were entering into negotiations with two other prospective tenants and notifying him that an offer of further rental made to him was withdrawn, it not having been accepted. This last statement in the letter referred to some negotiations for another lease. Thereupon, on July 29, 1944, counsel for the appellee gave counsel for the appellants sixty days' notice that appellee would exercise his option to purchase the property for $11,500, subject to the ground rent. Appellants, replying, denied that the option con-tinued during the extension period and declined to sell the tenant the property under such option. The tenant filed a bill in the Circuit Court No. 2 for specific per-formance which was answered, testimony was taken, and the chancellor decreed that the appellee was entitled to a conveyance of the property for the sale price men-tioned in the lease, and directed the appellants to convey the property upon payment of such price. From this decree the landlords appeal.

The question whether an option to purchase con-tained in a lease can be exercised by a tenant during an additional term provided for in the lease, has been pro-ductive of much difficulty, and has produced many deci-sions which cannot be reconciled. It seems to be gen-erally agreed that it depends upon the intention of the

parties to be gathered from the lease itself. However, many of the decisions turn upon the narrow question whether the lease is to be extended or whether the term is to be extended or whether the words used indicate that a new lease is to be executed. The results are necessarily varied, depending on the method of approach to the problem.

This Court has held, in a case in which the question was whether a lease for six years with the right of renewal for a further term of eight years and with a further right of renewal for ten years, was a lease for twenty-four years, and thereby subject to the right of redemption, that "the words 'renew' or 'renewal' are not words of art, and they have no legal or technical signification." The Court gave its authorities for that statement, including an earlier case of *Flanagin v. Hambleton,* 54 Md. 222, 227. It had previously cited a number of other cases and quotations from various text books and compilations. The conclusion was that the lease was a lease for twenty-four years and was, therefore, redeemable, the Court saying, "It will thus be seen, according to what we believe to be the weight of authority, supported by the stronger reason, that the question of whether the use of the word 'renewal' is to be taken to require the execution of a new contract, or whether it is to be construed as meaning an extension of the original term, is dependent upon the intention of the parties, to be gathered from the language of the lease, the purposes to be accomplished by its execution, and the surrounding circumstances at the time of its making." *Maryland Theatrical Corp. v. Manayunk Trust Co.,* 157 Md. 602, at page 614, 146 A. 805, 810.

In an early Maryland case, the owner of a half section of land in the State of Ohio agreed that a tenant might go and enter on said land and enjoy the same for a term of twelve years, the tenant to build a house on said land and pay the taxes. He also agreed with the tenant that if the latter should "think proper to purchase said land,

any time within the said term of rent" the tenant was to pay the landlord the sum of $600 therefor and the landlord was to make him a good and sufficient deed. There was no question of a renewal of the term or of the lease in that case, but the landlord declined to make the deed when tendered the $600 because he said the contract was a divisible one and, as to the option to purchase, wanted mutuality and he was not bound by it. This Court rejected that argument in the following words, "Where a contract consists of several distinct and separate stipulations on one side, and a legal consideration is stated on the other, it must be considered that the entire contract was in the contemplation of the parties in each particular stipulation; and formed one of the inducements therefor, and no one stipulation can be supposed to result from, or compensate for the consideration, or any portion of it, exclusive of other stipulations, unless the parties have expressly so declared; and this will be the case, whether the consideration be a sum of money to be paid in gross, or a specific act to be performed, or several payments in money, or several acts to be performed. It is impossible to say in this case, from the face of the contract, that the appellee would have agreed either to occupy the land, or to pay the taxes or to erect a house, except for this very privilege of purchasing the title, which he now seeks to enforce." *Stansbury v. Fringer*, 11 Gill & J. 149.

These words have been recently quoted with approval by the Supreme Court of Michigan in a case where there was a privilege of renewal and an option to purchase, and where the option to purchase was attempted to be exercised during the renewal period. The Court said that the lease ran for both the original period and the renewal period and that the option ran for the same period. *Meadow Heights Country Club v. Hinckley*, 229 Mich. 291, 201 N. W. 190.

The latest English cases hold that a lease is one contract and an option to purchase when accepted another

and an extension of the lease does not carry with it the collateral option. *Batchelor v. Murphy*, [1924] 2 Ch. Div. 252, *Sherwood v. Tucker*, [1924] 2 Ch. Div. 440. This last case is extensively annotated in 37 *A. L. R.* 1245.

The theory of the English cases seems to have been followed by the Supreme Court of Pennsylvania in the case of *Pettit v. Tourison*, 283 Pa. 529, 129 A. 587, 39 A. L. R. 1106. In that case, the privilege was "of renewing this lease" and the Court said that to renew a lease means a leasing again of the premises and implies that another lease is to be executed. Such a lease would not have to include the independent clause giving an option to purchase.

This Court had before it a case where a landlord rented his property to a tenant for three years, renewable for a similar period, with a covenant "to sell and convey unto the party of the second part, his heirs and assigns, the above described property and premises, for the sum of $1500, at any time before the expiration of this lease or tenancy." The lease was renewable unless the tenant gave notice to the contrary. This notice was not given. Six days after the first three years had ended, the landlord agreed to sell the property to a third party for $1,600, payable in installments. The landlord died intestate before the end of six years and the assignees of the tenant filed a bill against the administrator of the landlord and the third party just before the end of the renewal period to enforce specific performance of the covenant to sell and convey. The Court held that they were entitled to exercise the tenant's option, stating, "As a part of the consideration of the lease constituting the contract between the parties, Wells, the lessor, covenanted to sell the property to Hyson, his lessee, for $1500, at any time during the existence of the lease. This was a continual obligation running with the lease on the part of the lessor, with the option in the tenant to accept the same or not, within that time." *Maughlin v. Perry*, 35 Md. 352, at page 357.

In the case of *Thomas v. G., B., S. Brewing Co.*, 102 Md. 417, 62 A. 633, 634, the property was leased by the appellant to the assignor of the appellee for the term of one year, with a proviso that the agreement "with all its provisions and covenants" shall continue in force from term to term after the expiration of the term above mentioned, with the right of either party to terminate at the end of any term on thirty days' notice. The agreement to sell was contained in a clause that the tenant should have the right to purchase the property "at the end of said term" for the sum of $2,000. The appellant claimed that the option to purchase ended with the first yearly term. The appellee had given notice in a subsequent term that it intended to exercise the option. The Court said that inasmuch as the agreement with all its provisions and covenants was to continue in force from term to term, the option of purchase continued in force during every succeeding term.

In the case of *Waters v. Wambach*, 140 Md. 253, 117 A. 751, there was a lease for six months, with the privilege of renewal for another term of six months, and an agreement that the lease with all its provisions and covenants should continue in force from term to term after the expiration of the term first mentioned, with the right of either party to terminate on thirty days' notice. The lessee was given the option to purchase the property at the price of $2,600 and in case he should desire to buy the property " 'within the term' of the lease," he should be allowed the rent paid in, less the ground rent, water rent, taxes, insurance and interest at the rate of 6% on the purchase price. The property was rented by the lessee for four years. In the fourth year, the lessee was notified that the lease would not be renewed, and that the rent would be increased. Thereupon, he gave notice of his purpose to exercise the option. His right to do this was denied, and a suit for specific performance brought. The Court held that the option was one of the provisions to continue in force from term to term

after the expiration of the term which the lease first created.

We think the intention of the parties in the instant case, as gathered from the lease executed by them, is clearly that the option to purchase should continue during the extended term. The extension option says that such extended term shall be "subject to the aforegoing covenants and conditions otherwise herein contained." The option to purchase was not one of the "aforegoing covenants" but it was one of the "conditions otherwise herein contained" and it apparently was a very important one. It may well have been one of the chief considerations why the tenant entered into the lease, paid the rent and made the improvements he did. And this conclusion is strengthened, if it needs any strengthening, by the fact that the option to renew states that the tenant may extend the term hereby created for another term of five years and the option to purchase states that it can be exercised "at any time during the period of the term hereby created." The term created was three years with the right to extend for five years more, which made a term of eight years, which period, however, might be lessened at the pleasure of the lessee. That was the conclusion reached by the Court in the case of *Theatrical Corp v. Manayunk Trust Co.* heretofore referred to, and that decision is applicable to the case before us. There may be, and doubtless can be, distinctions drawn between provisions in different leases, and the earlier decisions make much of these distinctions, but the present tendency and, we think, the better rule, is to hold that where a lease with a right of renewal or extension contains an option to purchase, it will be considered as an indivisible contract. The option to purchase will go along with the term unless some contrary intention clearly appears and regardless of whether "the lease is renewed" or "the term is extended."

A different situation exists where a lease is not renewed or a term extended by agreement, but where the tenant

merely holds over as a tenant from year to year. There is then clearly a new tenancy, created by operation of law. *Smith v. Pritchett,* 168 Md. 347, 178 A. 113. Even in such a case, however, under the decisions of this Court, the tenant holds over subject to all the covenants in the original lease "which are applicable to his new situation." *De Young v. Buchanan,* 10 Gill & J. 149, 32 Am. Dec. 156; *Gostin v. Needle,* 185 Md. 634, 45 A. 2d 772.

For the reasons stated, the decree will be affirmed.

*Decree affirmed, with costs.*