## GULF OIL CORPORATION
### v.
**Harry E. CLARK and Ellen C. Clark, his wife; Richard Clark and June S. Clark, his wife; and Harry E. Clark, Administrator of the estate of Lynne S. Clark.**

Civ. No. 10680.

United States District Court
D. Maryland.

Jan. 23, 1959.

Morton J. Hollander and Melvin J. Sykes, Baltimore, Md., for plaintiff.

Richard W. Emory, William J. McCarthy and Venable, Baetjer & Howard, Baltimore, Md., for defendants.

THOMSEN, Chief Judge.

This is a suit for specific performance brought by a lessee (Gulf) to require defendants to convey to it in fee simple the property leased to it by defendants' predecessor in title. The lease contained an option to purchase, but defendants contend that the time for exer-

cising the option had expired before Gulf attempted to exercise it on May 2, 1958. Both plaintiff and defendants have filed motions for summary judgment, which turn on the construction of (1) the original lease, (2) a rider agreement and (3) Gulf's renewal letter. The parties are agreed that if those agreements, properly construed, extended the lease and option to purchase to September 14, 1958, they have no further evidence to offer; but if those documents extended the lease only to October 30, 1956, both parties may introduce additional evidence with respect to the nature of plaintiff's possession thereafter.

In April, 1941, Easton Motor Co. leased to Gulf land in Easton, Maryland, on which the lessor agreed to build a gasoline station. The lease provided:

"3. * * * the term of this lease shall commence on the date to be determined [October 30, 1941] * * * and shall run for a period of ten (10) years thereafter.

"4. During the original term of this lease agreement, the Lessee agrees to pay the Lessor a rental of One Hundred and Eighty Dollars ($180.00) per month. * * * It is agreed that the Lessee shall have the right to extend this lease for an additional term of five (5) years at a rental of One Hundred and Eighty Dollars ($180.00) per month, by giving Lessor written notice of its election to exercise this right of extension at least six (6) months before the expiration of the original term.

* * * * * *

"16. In consideration of the execution of this lease and rentals to be paid thereunder the Lessor hereby gives the Lessee, its successors and assigns, an option to purchase the premises herein leased at any time during the term of this lease or any renewal or extension thereof, for the sum of Twenty Thousand Dollars ($20,000.00) * * *."

In June, 1943, during gasoline rationing, a rider agreement was executed which provided:

"Recognizing that governmental regulations have restricted the use, for the purposes permitted, of the premises described in the aforementioned Lease so that it would be inequitable for Lessor to exact from Lessee the monthly rentals stipulated in said Lease, the undersigned mutually agree that effective with the rental payment due on October 31, 1943, and continuing until this Rider Agreement is terminated as hereinafter provided, the monthly rental provided for in Paragraph 4 of said Lease shall be reduced from $180.00 to $166.01. It is understood and agreed that the undersigned mutually agree that for each month this Rider Agreement is in effect, the aforementioned Lease Agreement shall hereby be extended for one month beyond the original termination date, which is October 30, 1951 at the full rental of $180.00 per month. It is further understood and agreed, however, that Gulf Oil Corporation may at its option pay the lessor the accumulated sum of the reduction by which it benefits and thereby be relieved of its obligation to extend the Lease as above mentioned.

"This Rider Agreement may be cancelled by either party on written notice given to the other party at least 30 days in advance of any monthly rental payment date.

"It is understood and agreed that this Rider Agreement is executed for the sole purpose of effecting this rental adjustment and that otherwise all of the terms, provisions and conditions of said Lease and every right thereunder of the parties thereto shall remain in full force and effect, with the sole exception of the Lease extension above mentioned."

The reduced rental provided for in the rider was paid until August 15, 1945, after which the full rental payments called for by the lease were resumed.

On April 30, 1951, Gulf wrote to lessor:

"Lease dated April 12, 1941 between Easton Motor Company and Gulf Oil Corporation provides in paragraph 4 for a renewal of five (5) years if we give six months notice before the expiration of the original term. At the time the lease was written the expiration of the original term would have been October 31st, 1951, however, the Rider Agreement of June 30th, 1943 stipulated that the rent would be reduced during the period of the National Emergency but we were to compensate you for this reduction by extending the original lease for a period equivalent to the number of months in which we enjoyed the reduction. The Rider was terminated on August 15th, 1945 and we were therefore obligated to extend the original term to September 14th, 1953.

"To conform with both the terms of the original lease and the rider dated June 30th, 1943, we hereby extend the lease to September 14th, 1958, with the understanding that all the other terms and conditions of the lease, including the rental, will remain in force during the extension period."

Lessor did not reply to this letter. Gulf made the rental payments called for by the lease until May 1958; they were accepted by lessor and by defendants, to whom lessor in 1953 had conveyed the property and assigned all its rights under the lease. In the summer of 1956, for the first time, defendants got in touch with Gulf's representative and contended that the lease would expire on October 30, 1956. Negotiations followed, which, although disputed, are conceded to be unimportant if the lease had been validly extended to September 14, 1958.

On May 2, 1958, Gulf wrote lessors: "In accordance with the terms of paragraph 16 of said Lease Agreement Gulf Oil Corporation hereby notifies you it is exercising its right to purchase the premises * * *." On May 3, 1958, de-

fendants wrote Gulf that it was a tenant at will on a month to month basis and told Gulf to quit the premises on or before July 1, 1958. On May 5, 1958, defendants wrote Gulf: " * * * We do not recognize that you have any right to purchase under the aforesaid lease, the same having expired on October 31, 1956, * * *."

For the reasons stated below, however, I have concluded that the lease was extended to September 14, 1958, and that the option to purchase was effectively exercised by Gulf on May 2, 1958.[1]

Defendants' first contention is that the 1943 rider agreement lacked consideration and mutuality of obligation, that it was a nudum pactum, void, and not specifically enforceable, and that Gulf's letter of April 30, 1951, was ineffective to extend the lease beyond October 30, 1956.

One fallacy of defendants' argument is that it assumes plaintiff is attempting to enforce the rider agreement. That is not the case. Gulf is seeking to enforce the contract created by its exercise of the option to purchase contained in the original lease, as extended by the rider agreement and the letter of April 30, 1951.

The rider agreement gave Gulf a temporary reduction in rent but compensated the lessor for this reduction by extending the original term of the lease at the full rental for a period equal to the number of months during which Gulf enjoyed the reduced rent. It was agreed, however, that Gulf might pay the accumulated sum of the reductions and be relieved of its obligation to extend the lease. The rider agreement, therefore, gave Gulf a choice—(a) to accept the extension of the lease, or (b) to pay a lump sum. If Gulf did not elect to pay the lump sum the lessor could enforce against Gulf the agreement to extend the lease until September 14, 1953, because Gulf's agreement to do so was supported by a valuable consideration, namely, the reduction in rent during the war. Even if, as defendants argue, the choice which

---

1. This decision makes it unnecessary to decide what rights Gulf would have had if it had been holding over after the termination of the lease.

was given to Gulf by the terms of the rider was not supported by a valuable consideration passing to the lessor, and was therefore not an *irrevocable option*, it was at least an *offer* by the lessor to accept performance of either (a) or (b). That offer could have been revoked by the lessor at any time *before* it was accepted, but could not be revoked *after* the lessor was advised of Gulf's election to accept one of the alternative offers. Gulf's letter of April 30, 1951, accepted offer (a) and by implication rejected offer (b). Gulf could not thereafter avoid an extension of the original term of the lease to September 14, 1953, by making a lump sum payment; *both* parties were thereafter bound by contract to recognize that the original term of the lease had been extended to September 14, 1953. Brewer v. Sowers, 118 Md. 681, 86 A. 228; Thomas v. Gottlieb Bauernschmidt, Straus Brewing Co., 102 Md. 417, 62 A. 633; Corbin on Contracts (1950), sec. 263, p. 870.

Defendants argue that the intent and meaning of the rider agreement was "that if Gulf did not choose to repay the sum of the reductions, then it would continue the lease beyond October 30, 1951, for at least one month for each month that it took advantage of the rent reduction"; that this purpose "was accomplished when the 5 year renewal option was exercised"; and that "it was never the purpose and intention of the parties to enlarge the renewal and purchase options in the lease by Gulf at its option to tack the 5 years of the extension and purchase options onto the 22½ months of the rent reduction."

This argument, if accepted, would reduce to three years the five year renewal option provided for in the lease. But the argument is not supported by the provisions of the rider agreement. There is nothing to indicate that the lengthening of the original term of the lease was intended to diminish the tenant's right to the stipulated extension after the expiration of the original term. The rider agreement provided that for each month the rental was reduced during the war emergency, the "lease agreement" would be "extended for one month beyond the original termination date, which is October 30, 1951, at the full rental of $180 per month". The rider agreement stated that it was made "for the sole purpose of effecting this rental adjustment", and that apart from the rental adjustment, "all of the terms, provisions and conditions of said Lease and every right thereunder of the parties thereto shall remain in full force and effect with the sole exception of the Lease extension above mentioned." The lease agreement thus extended contained, as one of the tenant's "rights thereunder", the "right to extend this lease * * * for an additional term of five (5) years * * * by giving Lessor written notice of its election to exercise this right of extension at least six (6) months before the expiration of the original term".

The lease having been extended to September 1958, the tenant's option to purchase, which was an integral part of the contract, was likewise extended to September 1958. In Gressitt v. Anderson, 187 Md. 586, 589, 51 A.2d 159, 160, the court said: "This court recently decided that where a lease, with a right of renewal or extension, contains an option to purchase, it will be considered as an indivisible contract and that the option to purchase goes along with the term, unless some contrary intention clearly appears. Schaeffer v. Bilger, [186 Md. 1,] 45 A.2d 775, 163 A.L.R. 706." No contrary intention appears on this record.

Defendants contend that the letter of April 30, 1951, "did not bind Gulf to extend the term to September 14, 1958 for the further reason that Gulf could cancel and terminate under paragraph 15 of the Lease." That paragraph granted Gulf the right and privilege to cancel and terminate the lease "at the end of the fifth year of the term thereof or at the end of any year of said term thereafter" by paying for lessor's account the then unpaid balance of a ten year promissory note given by the lessor to finance construction of the service station. Al-

though the expression "the term", as used in paragraph 15, ordinarily might include extensions, Schaeffer v. Bilger, 186 Md. 1, 45 A.2d 775, 163 A.L.R. 706, an examination of the entire lease shows that the privilege of cancellation granted by paragraph 15 was to apply only during the last five years of the original ten year term. Where the parties intended to include renewals or extensions as well as the original term of the lease, they expressly so provided; e. g. paragraph 5 refers to the " * * * term herein created, or any extension thereof * *." Paragraph 7 states: " * * * during the term of this lease or extension thereof * * * ". There are similar provisions in paragraphs 10, 11, 14, and 16. Since paragraph 15 speaks only of "the term", it is evident that the parties intended the tenant to have the option to cancel only during the last five years of the original term.

This construction of paragraph 15 is supported by the fact that the cancellation privilege during the last five years of the ten-year term was tied in with the existence of a ten-year note to finance the improvements on the property, and could be exercised only if the tenant paid for the lessor's account the unpaid balance on the note. But the lessor itself paid the note in regular course; thereafter it was impossible for the tenant to comply with the condition precedent to its right of cancellation under paragraph 15, and that paragraph became inoperative.

Defendants argue also that the fact that Gulf exercised the option to renew on April 30, 1951, indicates that it did not really consider the rider agreement as extending the renewal option. But the letter itself stated that it was sent at that time to "conform with both the terms of the original lease and the rider", in view of the fact that the original lease had required six months notice prior to the expiration of the original term. Moreover, the letter purported to exercise a five year renewal option, extending the lease until September 1958. The original lessor did not challenge this position, nor did defendants challenge it until 1956, five years after the letter was written. In the meantime they continued to accept the full rentals. If they had taken and established their position that Gulf could extend the lease for only three years, Gulf might not have extended the lease at all, or it might have exercised its option to purchase before October 1956.

The contract composed of the original lease, the rider agreement, and Gulf's letter of April 1, 1951, included an option to Gulf to purchase the property at any time before September 14, 1958. That option was supported by a valuable consideration, namely, Gulf's obligations under that contract, and therefore could not be withdrawn by defendants as an ordinary offer could have been. That option was exercised by Gulf in May 1958. The obligations of the parties under the new contract thus created are specifically enforceable. Brewer v. Sowers, 118 Md. 681, 86 A. 228; Thomas v. Gottlieb, Bauernschmidt, Straus Brewing Co., 102 Md. 417, 62 A. 633; Corbin on Contracts, sec. 263, p. 870; Litz v. Goosling, 93 Ky. 185, 19 S.W. 527, 21 L.R.A. 127, 128, 131; 12 Am.Jur., Contracts, sec. 37.

Counsel will prepare an appropriate decree.