**SHUFORD DEVELOPMENT COMPANY,**
**Plaintiff-Appellee,**

v.

**CHRYSLER CORPORATION, Defendant-Appellant.**

**No. 30318.**

United States Court of Appeals,
Fifth Circuit.

May 27, 1971.

Rehearing Denied Aug. 23, 1971.

Rehearing En Banc Denied
Sept. 21, 1971.

David J. Fuller, William Y. Akerman, Donald T. Senterfitt, Orlando, Fla., of Akerman, Senterfitt, Edison & Wharton, Orlando, Fla., for defendant-appellant.

Charles M. Harris, Titusville, Fla., Crofton, Holland & Starling, P. A. Titusville, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and PHILLIPS,\* and INGRAHAM, Circuit Judges.

PHILLIPS, Circuit Judge:

The question presented on this appeal is the proper construction of a termination provision in a lease entered into on May 3, 1963, between K.L.S., Incorporated, the name of which was later changed to Shuford Development Company [1] as Lessor, and Chrysler Corporation,[2] as Lessee, of certain premises in the City of Cape Canaveral, Florida, consisting of 57,224 square feet of ground and the buildings and improvements specified in Exhibit "A", attached to the lease, to be used primarily by the Lessee's management staff, "including but not limited to related planning, engineering, purchasing, manufacturing, fabrication, testing and production support activities as are or may be necessary or incidental to assisting Lessee in

\* Of the Tenth Circuit, sitting by designation.

1. Hereafter referred to as the Lessor.
2. Hereafter referred to as the Lessee.

performance of its contracts with the Department of Defense and the National Aeronautics and Space Agency, or other agencies of the United States Government, * * *."

The primary term of the lease was to begin on October 1, 1963, and continue for 60 months, unless sooner terminated, as provided in the lease. The stipulated rental was $8,725 per month, payable in advance.

The lease provided:

"Lessee shall also pay an additional sum covering the last monthly rental of the lease term which sum shall be paid on the date the first monthly rental hereunder is due and payable, and which shall be deemed as a security deposit until earned."

The Lessor agreed to construct buildings and improvements at its own expense on the leased land, so it would meet the particular need of the Lessee, as set forth and specified in Exhibit "A", attached to the lease.

The Lessor completed construction of the buildings and improvements on the leased land in accordance with the particular needs of the Lessee, as specified in Exhibit "A", in October 1963, and on November 1, 1963, the Lessee entered into possession of the leased premises. In accordance with the provisions of the lease, the primary 60–month term actually commenced on November 1, 1963.

Paragraph 4 of the lease further provided:

"Lessee may at its option obtain renewals of the lease for each of five consecutive terms of twenty-four (24) months duration upon the same terms and conditions herein stated by giving the Lessor written notice of its intention to renew not less than ninety (90) days prior to the expiration of any specified term; provided, however, that the rent for the first and second twenty-four (24) month renewal shall be the same as is hereinbefore set forth; and provided, further, that the third twenty-four (24) month renewal shall be at the rate of five per-

cent (5%) per annum less than the base rate set forth herein and the fourth and fifth twenty-four (24) month renewal shall be at the rate of ten percent (10%) less than the base rate set forth herein. (Base rate as used in this clause shall be construed to mean the rate per square foot per annum as is set forth in the Habendum clause of this lease.)" [which was $1.-83].

On June 20, 1968, the Lessee notified the Lessor in writing that it exercised its option to renew the lease for a two-year period, or through October 31, 1970. The parties did not apply the security deposit in payment of the rental for the last month of the five-year primary term.

The termination provision in the lease appears in paragraph 6 thereof and reads as follows:

"While the period of this lease is intended to run for sixty (60) months, Lessor recognizes that Lessee's requirements for the space herein contemplated is predicated on the fact that Lessee is now engaged in contracts with agencies of the United States Government, including but not limited to the Department of Defense and the National Aeronautics and Space Agency, and requires such space for its employees working and operating in the County of Brevard, State of Florida. In the event Lessee shall remain the entire term of sixty (60) months aforesaid, then the rents set forth in the Habendum clause shall constitute Lessee's obligation for payments hereunder. However, Lessor agrees that Lessee may terminate this lease at any time after the first twenty-four (24) months by giving Lessor sixty (60) days written notice to that effect. It is understood that in such events Lessee shall pay to Lessor a penalty, therefore [sic], which penalty shall be calculated as following: The penalty for termination at the end of the 24th month shall be $227,925.00 and for each and every month over and beyond the first 24 months of the primary 60 month lease term that

Lessee shall remain upon the premises and abide by the covenants and provisions set forth herein the said penalty for termination before the expiration of this lease, shall be reduced $6,331.-00."

By a letter dated October 7, 1969, the Lessee notified the Lessor that pursuant to the provisions of paragraph 6 of the lease it was exercising its right to terminate such lease, effective December 31, 1969. The Lessee did not pay the rental for December 1969. On December 31, 1969, the Lessee vacated the premises and tendered the keys to the Lessor at its office.

On January 13, 1970, the Lessor commenced an action against the Lessee in the Circuit Court of Brevard County, Florida, to recover rental in the amount of $8,725 for the month of December 1969 and the same amount for rental for the month of January 1970, under the lease, together with interest and costs.

The requisite diversity of citizenship and jurisdictional amount involved being present, the Lessee removed the proceedings to the United States District Court for the Middle District of Florida, Orlando Division, and filed its answer denying its obligation to pay the rent claimed and alleging that it had properly terminated the lease, as of December 31, 1969.

Both sides moved for summary judgment. The court sustained the Lessor's motion for summary judgment and entered a judgment in its favor for $17,979.18, being the amount of rental, plus interest.

█ The law of Florida is in accordance with the generally accepted rule that the cardinal rule in the construction of contracts is to ascertain and give effect to the mutual intention of the parties.[3]

It is well settled law that the court in ascertaining such intent should place itself as nearly as possible in the position of the parties when their minds met on the terms of the contract, and in the light of the language of the contract, itself, and the facts and circumstances surrounding, leading up to, and attendant with its execution, arrive at and give effect to such mutual intent.[4]

The lease differed from the ordinary lease in important particulars. The Lessee intended to use the leased premises primarily for its management staff, including manufacturing, fabrication, testing and production support activities as should be necessary or incidental to assisting it in the performance of its contracts with the Department of Defense and the National Aeronautics and Space Agency, or other agencies of the United States Government.

Paragraph 6 recites that "the period of this lease is intended to run for sixty (60) months," and that if the Lessee "shall remain the entire term of sixty (60) months aforesaid," then the rental of $8,725 per month, payable in advance, "shall constitute Lessee's obligation for payments hereunder."

It is apparent from the provisions of paragraph 6 of the lease that the parties further contemplated that the Lessee's need for the leased premises might last for the full 60–month term of the original lease. It is also apparent they contemplated that it might cease by the end of the first two years of the 60–month term. Hence, the Lessee needed a termination provision.

The building and improvements constructed by the Lessor on the leased land were not suitable for tenants generally. They cost the Lessor a very substantial outlay of money. Hence, the Lessor need-

3. Southern Bell Tel. & Tel. Co. v. Florida East Coast Ry. Co., 5 Cir. (Fla.), 399 F.2d 854, 856;
Pickren v. United States, 5 Cir. (Fla.), 378 F.2d 595, 599;
Jacksonville Terminal Co. v. Railway Express Agency, Inc., 5 Cir. (Fla.), 296 F.2d 256, 259.

4. W. C. Shepherd Co. v. Royal Indemnity Co., 5 Cir., 192 F.2d 710, 715;
Liberty Nat. Bank & Trust Co. v. Bank of America Nat. Trust & Sav. Ass'n, 10 Cir., 218 F.2d 831, 840;
Nevada Half Moon Mining Co. v. Combined Metals Reduction Co., 10 Cir., 176 F.2d 73, 75.

ed protection against losses by it from termination of the lease by the Lessee at the end of the first two years of the 60–month term or termination by the Lessee thereafter, but before the end of the 60–month term. The termination provision recited that the Lessee could terminate the lease at any time after the first 24 months of the 60–month term, but on condition that it pay the Lessor a penalty for such termination.

Paragraph 6 of the lease provided that the Lessee should pay to the Lessor a penalty of $227,925, if the Lessee terminated the lease at the expiration of such 24–month period. But it also provided that the penalty the Lessee should pay the Lessor for termination should be reduced in the amount of $6,331 for each month after such 24–month period that the Lessee should remain in occupancy of the premises and abide by the covenants and provisions of the lease.

Thus, it will be seen that all of the provisions of paragraph 6 providing for a termination of the lease by the Lessee are geared to the 60–month term of the original lease. Even the penalty reductions were fixed so they would approximately equal the maximum penalty of $227,925, if the Lessee remained in occupancy of the leased premises for the full 60–month term of the lease. The difference was only $9, and that was probably because the parties used round figures.

The 60–month term of the original lease is referred to three times in paragraph 6, but the two-year extensions of the lease are not directly or indirectly referred to therein; and there are many provisions in paragraph 6 that would not affect nor have any application to a renewal of the lease for a term of two years.

There is a striking difference in the language of paragraph 6 of the lease and the language of paragraph 26, the latter of which gave the Lessee an additional option. Paragraph 26 in part reads:

"As a further option under this lease, Lessor grants and gives to Lessee *for the term of this lease or any extension or renewal thereof,* the sole and absolute right to expand the facilities heretofore granted, let or leased to Lessee on any of the land heretofore demised. * * * However, * * * upon the expiration of this lease, *or any extension or renewal,* such improvements shall revert to the Lessor. * * *" (Italics ours.)

The provisions of paragraph 26 indicate that when the parties intended that an option granted to the Lessee should extend to and apply to two-year extensions of the lease, they said so in plain and unmistakable language.[5]

■ Had the parties intended that the termination option granted to the Lessee in paragraph 6 of the lease should apply not only to and during the last 36 months of the primary term of the lease, but also should apply to and during each of the two-year renewals of the lease, which the Lessee elected to acquire under the option given it by paragraph 4 of the lease, it would have been a simple matter to have clearly manifested that intention. They could have done so by changing the third sentence in paragraph 6 of the lease to read as follows:

"However, Lessor agrees that Lessee may terminate this lease" *or any two-year renewal thereof acquired by Lessee under the provisions of paragraph 4 of this lease,* "at any time after the first twenty-four (24) months" *of the primary term of 60 months* "by giving Lessor sixty (60) days written notice to that effect." (New matter in italics.)

Counsel for Lessee strongly rely on Sisco v. Rotenberg, Fla., 104 So.2d 365. We think that case is distinguishable from the instant case.

5. Cf. Gulf Oil Corporation v. Clark, D.C. Md., 169 F.Supp. 717, 720–721, in the second column on page 720 at syllabus [2] and continuing on to end of paragraph on page 721.

That case involved a lease which contained a provision which gave the lessee an option to purchase the leased premises "during the tenure of this Lease" for a stated amount, and also gave the lessee "an option to renew this lease for a period of five (5) years." The lease was renewed. During the first year of the renewal period, the lessee undertook to exercise the option to purchase. On lessor's refusal to sell, the lessee brought an action for specific performance and was awarded specific performance by the trial court.

While the lessor contended that the option to purchase applied only to the original term, she based that contention, not on the language of the option to purchase provision, but on the contention that the lease and the option to purchase constituted two separate contracts.

That is the doctrine followed by the English courts (see Sisco v. Rotenberg, supra, at 370), but it is contrary to the great weight of authority in the United States (see annotations to 37 A.L.R. 1245 and 163 A.L.R. 711). However, some American jurisdictions follow the English rule, notably Pennsylvania and New Jersey. (See Pettit v. Tourison, 283 Pa. 529, 129 A. 587 (1925), and Andreula v. Slovak Gymnastic Union Sokol Assembly No. 223, 140 N.J.Eq. 171, 53 A.2d 191, 193. See also discussion of those cases in Sisco v. Rotenberg, supra, 104 So.2d at 369, 370, 372.)

In Sisco the Florida Supreme Court adopted the rule supported by the great weight of authority and affirmed the decree for specific performance.

For the reasons herein indicated, the judgment is affirmed.

## ON PETITION FOR REHEARING

PHILLIPS, Circuit Judge:

In a petition for rehearing, Chrysler, defendant below and appellant here, asserts that we misconstrued and erred in failing to follow Sisco v. Rotenberg, Fla. 1958, 104 So.2d 365, in our former opinion herein.

In Sisco v. Rotenberg, supra, Sisco, whom we shall hereinafter refer to as the lessor, entered into a lease of certain real estate situated in Florida with Rotenberg, whom we shall hereinafter refer to as the lessee, for a base term of five years.

The last two paragraphs of the lease provided:

"The Lessor agrees, during the tenure of this Lease, to sell to the Lessee, the foregoing described real estate with appurtenances thereto appertaining, for a cash purchase price of Twenty Thousand Dollars ($20,000.-00).

"It Is Agreed that the Lessee shall have an option to renew this Lease for a period of five (5) years on the same terms and conditions providing the said Lessee makes this request in writing to the Lessor on or before October 2nd, 1954." [1]

Before October 2, 1954, and during the base term of the lease, the lessee duly exercised his option to extend the lease for five years. During the first year of the renewal in the extension period of the lease, the lessee duly notified the lessor of his election to purchase. The lessor refused to convey and the lessee brought a suit for specific performance. From a decree for specific performance, the lessor appealed.

■ The general rule, supported by the weight of authority, is that where a lease confers on the lessee an option to purchase the property at any time during the term of the lease, and the lease is thereafter extended in accordance with its terms, the option to purchase is also extended for the period of the extended

---

[1]. The foregoing two paragraphs are the only provisions of the lease involved in Sisco, quoted or otherwise set forth in the opinion of the court in that case.

term,[2] absent provisions in the lease indicating a contrary intention.[3]

The lessor and appellant in Sisco admitted such was the general rule, but contended there was authority to the contrary, which Florida was free to adopt. (See opinion in Sisco, at page 368 of 104 So.2d.) He cited no decisions in support of his contention.

The English decisions are contrary to the general rule set forth, supra, and are based on the premise that the lease and option to purchase, although incorporated in the same instrument, are separate contracts and an extension of the former does not extend the latter.[4] The decisions of a small number of American states are also contrary to such general rule.[5]

We do not understand that the lessor in Sisco contended that the language of the lease there involved took that case outside of the general rule, but rather urged the court to adopt the minority view followed in England and in some American states that the lease and option to purchase constituted two separate contracts and that an extension of the former did not operate to extend the latter.[6]

We shall assume, since counsel have cited no authority to the contrary and we have found none, that the general rule applicable to options to purchase, stated supra, also applies to options to terminate, absent provisions in the lease indicating a contrary intent.

It is settled law that the cardinal rule in the construction of contracts, including leases, is that the court shall endeavor to ascertain and give effect to the mutual intention of the parties, and a general rule which would effect a result contrary to the mutual intention of the parties must give way to such primary or cardinal rule.[7]

We think it clear from paragraph 6 of the lease in the instant case, set out

---

2. 49 Am.Jur.2d, Landlord and Tenant, § 382, p. 399;
   Annotations: 37 A.L.R. at p. 1245; 163 A.L.R. at p. 712;
   15 A.L.R.3d at pp. 474, 475, 476;
   Contra: 15 A.L.R.3d at pp. 482, 483, 484.

3. See Schaeffer v. Bilger, 186 Md. 1, 4, 45 A.2d 775, 777, 163 A.L.R. 706, where the court, after reviewing many decisions, at page 708 said:
   "The question whether an option to purchase contained in a lease can be exercised by a tenant during an additional term provided for in the lease, has been productive of much difficulty and has produced many decisions which cannot be reconciled. *It seems to be generally agreed that it depends upon the intention of the parties to be gathered from the lease itself. * * *"* ((Italics ours.)
   See also, Denver Plastics, Inc. v. Snyder, 160 Colo. 232, 416 P.2d 370, 15 A.L.R.3d 465;
   Carter v. Frakes, 303 Ky. 244, 197 S.W. 2d 436, 438;
   (See, however, Lexington Flying Service, Inc. v. Anderson's Exr., Ky., 239 S.W.2d 945);
   49 Am.Jur.2d, Landlord and Tenant, at pages 400, 406;
   See also, cited in note 7 hereof, infra.

4. Sherwood v. Tucker, English Court of Appeal (1924) 2 Ch. 440, 37 A.L.R. 1239;

Batchelor v. Murphy, English Court of Appeal (1924) W.N. 207, 68 Sol.Jo. 738, 40 Times L.R. 642, 37 A.L.R. 1240.

5. Parker v. Lewis, 267 Pa. 382, 110 A. 79; Pettit v. Tourison (1925) 283 Pa. 529, 129 A. 587, 39 A.L.R. 1106;
   Andreula v. Slovak Gymnastic Union Sokol Assembly No. 223, 140 N.J.Eq. 171, 53 A.2d 191, 193;
   Annotation, 15 A.L.R.3d 483, 484.

6. Counsel for the lessor in Sisco did argue that because of the steady advance of land values in Florida, " * * * She (the lessor) * * * surely did not intend to be bound by the terms of her lease to a fixed price over a large number of years. * * * " The court held that the lease was unambiguous and disposed of such contention of counsel, supra, by saying:
   " * * * We note that the record is silent as to what the market value of the subject realty was, or is, and it is our opinion that, as contended by the plaintiff, the intention of the parties is to be obtained from the unambiguous terms of the contract and not by what may have existed in the minds of the parties but but was not reflected in the written lease. * * * "

7. In St. Lucie County Bank & Trust Co. v. Aylin, 94 Fla. 528, 114 So. 438, 441, the Supreme Court of Florida quoted with

in our former opinion at pages 431 and 432, that the parties intended thereby to fix their respective rights and obligations with respect to the 60-month term, including the right of termination; and that the phrase "this lease" as used in that part of the termination provision in paragraph 6, reading "terminate *this lease*" (italics ours) meant the original 60-month lease and gave the lessee no right to terminate during the two-year renewal terms of the lease.

This we think is manifest by the fact that when the parties intended to give an option or a right applicable during a renewal period, they used the phrase "this lease, *or any extension or renewal thereof.*" See paragraph 26 of lease, quoted on page 433 of our former opinion, where the parties used the phrase "this lease, or any extension or renewal thereof," with respect to another option granted the Lessee, and also used the same phrase with respect to a right given to the Lessor.

■ Moreover, it is a well settled rule of construction that the same word or phrase used in different provisions or parts of a contract will be presumed, in the absence of language plainly indicating the contrary, to have been used in the same sense throughout the contract.[8] Here, it is perfectly clear that when the parties to the lease involved in the instant case used the phrase "this lease" in paragraph 26 thereof, they referred to the original lease for 60 months.

■ And it is further a primary rule of construction that the intention of the parties shall be determined, not from separate provisions of the contract, but from a consideration of the entire contract.[9]

Moreover, it is plain from the language of paragraph 6 of the lease involved in the instant case that the par-

approval from Gillet v. Bank of America, 160 N.Y. 549, 55 N.E. 292, the following:

"'* * * Indeed, the great object, and practically the only foundation, of rules for the construction of contracts, is to arrive at the intention of the parties. This is a most conspicuous and far-reaching rule, * * *.'"

See Underwood v. Underwood, Fla., 64 So.2d 281, where St. Lucie County Bank & Trust Co. v. Aylin, supra, was quoted with approval.

See also, Milwaukee Mechanics Ins. Co. v. Davis, 5 Cir., 198 F.2d 441, 444, where the court quoted with approval from New York Life Ins. Co. v. Babcock, 104 Ga. 67, 30 S.E. 273, 275, as follows:

"'The fundamental question to be determined in the legal construction of all contracts is, what was the real intention of the parties?'";

National Hotel, Inc. v. Koretzky, Fla., 96 So.2d 774, 776;

See also, Schaeffer v. Bilger, 186 Md. 1, 45 A.2d 775, 777, 163 A.L.R. 706, where the court said:

"The question whether an option to purchase contained in a lease can be exercised by a tenant during an additional term provided for in the lease, has been productive of much difficulty, and has produced many decisions which cannot be reconciled. It seems to be generally agreed that it depends upon the intention of the parties to be gathered from the lease itself. * * *"

The principle is stated in 17A C.J.S. Contracts § 295, p. 45, as follows:

"The fundamental, basic, primary, ultimate, or paramount question to be determined in the legal construction of all contracts is what the real intention of the parties was. * * *" See also, cases cited in our former opinion, page 432, notes 3 and 4.

8. Jefferson Lake Sulphur Company v. United States, D.C.E.D.La., 207 F.Supp. 124, 126;

Midland Valley R. Co. v. Railway Express Agency, 10 Cir., 105 F.2d 201, 203;

Barnes v. Townley, Okl., 448 P.2d 468, 471;

Bakery & Confectionery Workers' International Union, Local No. 492 v. National Biscuit Co., 3 Cir., 177 F.2d 684, 687;

Holter v. National Union Fire Ins. Co. of Pittsburgh, Pa., 1 Wash.App. 46, 459 P.2d 61, 64;

Pringle v. Wilson, 156 Cal. 313, 104 P. 316, 319.

9. City of Orlando v. Murphy, 5 Cir., 84 F.2d 531, 534;

Union Cent. Life Ins. Co. v. Neuhoff, 157 Fla. 9, 24 So.2d 906, 907;

Florida Power Corporation v. City of Tallahassee, 154 Fla. 638, 18 So.2d 671, 674.

ties intended that the right to terminate the base term should not arise until two years of that term had expired. The provision for five renewal terms of two years each, in effect, gave the lessee the same right to end his tenancy at the end of any two years of occupancy, without penalty, by failing to exercise his right to extend the lease for another or succeeding two-year term, after the end of a term, up to and during the fourth two-year term.

The petition for rehearing is denied.

## ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

PER CURIAM:

Except insofar as covered by the supplemental opinion the Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied. The application to certify this case to the Supreme Court of Florida is likewise denied.